James E. LANE, Plaintiff-Appellee,

v.

John W. GARDNER, Successor to Anthony J. Celebrezze, Secretary of Health, Education and Welfare, Defendant-Appellant.

No. 16660.

United States Court of Appeals
Sixth Circuit.

March 10, 1967.

Edwards, Circuit Judge, dissented.

Florence Wagman Roisman, Department of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, Max Wild, Attys., Department of Justice, Washington, D. C., John H. Reddy, U. S. Atty., Knoxville, Tenn., on brief, for appellant.

John D. Lockridge, Knoxville, Tenn., William C. Wilson, Albert L. Witt, Knoxville, Tenn., on brief, Ambrose & Wilson, Knoxville, Tenn., of counsel, for appellee.

Before O'SULLIVAN and EDWARDS, Circuit Judges, and CECIL, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

This is an appeal by the Secretary of Health, Education and Welfare from a judgment of the United States District Court for the Eastern District of Tennessee directing the granting of a period of disability and disability insurance benefits under the Social Security Act to plaintiff-appellee, James E. Lane. The application of appellee for such benefits was denied by decision of the Secretary which affirmed findings made by its examiner after a hearing at which the applicant-appellee had been represented by counsel. Thereafter, applicant brought suit in said District Court pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to set aside the Secretary's decision. After review of the record made before the Secretary, plaintiff-appellee's motion for summary judgment reversing the Secretary's decision was granted, and benefits awarded. We reverse.

Plaintiff-appellee's entitlement to benefits under the Social Security Act was

dependent upon showing that he was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." Sections 216(i) (1) and 223(c) (2) of the Act, 42 U.S.C. §§ 416(i) (1) and 423(c) (2). Plaintiff is suffering from a medically determinable physical impairment. On November 17, 1960, while working in a stockyard in Clinton, Tennessee, Lane was gored by a boar hog whose tusks entered his right leg below the knee severing the common peroneal nerve. Surgery failed to reunite the nerve and Lane's permanent disability is described as a "drop foot". He is unable to elevate his right foot or turn it out laterally at the ankle. At the hearing before the examiner, there was evidence that in addition to this mechanical impairment, Lane suffers pain in his right calf and thigh, and that his ability to walk or stand, even with a fitted brace, has been substantially reduced. Atrophy of his right calf and thigh was also demonstrated. He was fitted with a brace which embodied a spring to raise his foot.

Plaintiff's background and his own description of his disabilities are set out, without disagreement by plaintiff, in appellant's brief as follows:

### Appellee's background.

"Appellee, alleging disability commencing at the age of 38, was born in 1922 in Tennessee. He left school at the age of 12 after completing third grade. However, he testified that he is virtually unable to read and write.

"Appellee's work experience has been confined to fairly heavy manual labor. He cut timber, worked on an automobile assembly line, and as a stock handler. His work experience includes general agricultural duties particularly around dairy farms and handling livestock. Additionally, he cleaned houses for rental, and laid pipe for gas lines.

"Appellee lives with his wife and six minor children in a house situated on 36 acres of farmland which he rents for $12 a year. He receives $12.55 a week in workmen's compensation for his injury pursuant to an award of total disability by the Circuit Court of Anderson County, Tennessee. Additionally, his wife and children receive welfare assistance of approximately $110 a month."

### Appellee's description of his disabilities.

"At the hearing, appellee evaluated his impairment as disabling. He said that he could not stand steadily or walk in any but level areas without a cane; nor could he jump or run. He stated that his right leg was shorter and required a built-up shoe with which he can balance himself so long as he is wearing a brace. He stated that he could climb stairs at his own pace but could not crawl because of the pain in his knee. He testified that he was unable to turn as well as he had been able to before the injury and that he can only bear a little weight. He stated that he could not do knee bends but that he can stoop from the hips so long as he puts one leg out. He testified that he could not crouch or sit as well as before because of the pain in his hip and leg and that he could kneel on one knee only. He stated that so long as he put one foot out, he was able to reach as well as before his accident but that he could not lift, carry, push or pull as well as before his accident. He did testify, however, that he could handle and use his fingers as well as before the injury.

"There also appeared on appellee's behalf his wife, Ruby Lane, and his aunt, Mrs. Ramsey Daugherty. Both of them corroborated appellee's assessment of his impairment."

We then have a case where plaintiff, due to permanent impairment, admittedly is unable to engage in the work by which he had provided himself with a livelihood prior to his injury. In such situation it is the rule of this Circuit that it became the Secretary's burden, if

benefits were to be denied, to establish that plaintiff-appellee was nevertheless able to engage in lighter work in jobs which existed and were being performed in the vicinity of plaintiff's place of residence. May v. Gardner, 362 F.2d 616, 618 (CA 6, 1966); Slone v. Gardner, 355 F.2d 485, 486, 487 (CA 6, 1966). The Secretary and his examiner essayed to meet this burden.

The record contains expressions of opinions by various doctors as to plaintiff's injuries. Some of these had treated plaintiff and performed surgery on his right leg. One, who had not directly examined plaintiff, expressed an opinion upon a review of the entire medical history of plaintiff. None of these witnesses said that plaintiff was totally disabled and, rather, gave varying estimates as to the percentage of plaintiff's disabilities and his capacity for work. One doctor concluded that plaintiff was "not able to do hard work." Another said, "this man has a small disability in the lower right extremity. He is certainly not severely disabled, in my opinion"; this witness expressed the view that plaintiff had a permanent partial disability to his body as a whole of 30%. A third doctor who had performed surgery on the injured leg after an examination some two years later when plaintiff had been equipped with a foot brace, "advised at that time that he [plaintiff] may seek light employment," assessing the disability in the injured leg at 65%. A fourth doctor who examined plaintiff after his disability reached its permanent status and had before him reports of the three earlier attending doctors, said that plaintiff had a 40% disability in the injured leg and then commented that "this might be reduced by some fixation or orthopedic procedure at the ankle. I believe, however, that the patient can function in his previous activities without too much difficulty with what he has at the present time."

A doctor who made the strongest case for plaintiff placed his total disability at 30%, with a 90% loss of use of the injured leg itself. He further said that any work that plaintiff might perform "would have to be some occupation not involving walking to any extent or standing for any prolonged period," but he did not think that plaintiff's condition was especially painful; he said that it was debatable whether plaintiff's disability was as serious as the loss of a leg, although observing that "sometimes injuries to extremities are worse than not having them."

A final witness, a professor and full time neurologist at Vanderbilt Hospital, was given the full medical history of plaintiff and was requested to answer specific questions composed and submitted to him by the Secretary's examiner. This witness remarked that "a properly fitted drop-foot brace offers excellent aid in overcoming this [plaintiff's] handicap. In fact, with such a brace some people have developed a normal appearing gait and can perform quite normally." He expressed an opinion that plaintiff retained full capacity for balancing, crawling, standing, turning, stooping, crouching, kneeling, sitting, reaching, lifting, carrying, throwing, pushing, pulling, handling and fingering, and that he retained only partial capacity to engage in walking, jumping, running and climbing. The witness concluded that "this type of injury is usually compatible with a normal and active occupational life even when permanent. Since an appropriate brace allows much of the disability to be minimized, it is possible for such patients to engage in usual occupations."

The credibility of these professional witnesses is not questioned. It is true that the plaintiff himself, corroborated by his wife and an aunt, claimed inability to do some of the things that the doctors said he could do. And it is true that plaintiff has had no job since the accident—but it is clear that he has not seriously sought to find work of a character which the evidence discloses he could perform. His total effort to obtain employment consisted of several trips to various employment agencies: he found the Oak Ridge Employment Service

closed on the occasions he visited it and therefore did not register with it; he said that at the LaFollette Employment office—when he told the clerk in charge that he had only a third grade education —he was informed there was nothing open. To the question "Have you made any independent effort to find work by going to any prospective places of employment?" he answered, "No".

It was for the Secretary and his examiner, as the factfinders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony. Celebrezze v. Sutton, 338 F.2d 417, 421 (CA 8, 1964); Thomas v. Celebrezze, 331 F.2d 541, 543 (CA 4, 1964); Miller v. Ribicoff, 198 F.Supp. 819, 821 (E.D.Mich. 1961). Judicial review of the Secretary's findings of fact is limited to inquiry whether there is substantial evidence to support such findings. Section 205(g) of the Act, 42 U.S.C. § 405(g); May v. Gardner, 362 F.2d 616, 618 (CA 6, 1966); King v. Celebrezze, 341 F.2d 108, 109 (CA 6, 1965). We hold that there was substantial evidence supporting the Secretary's finding that plaintiff with his disabilities was not foreclosed from any gainful employment. That the District Court or ourselves might arrive at a different factual conclusion is irrelevant. The courts do not try these factual issues de novo. Alsobrooks v. Gardner, 357 F.2d 110, 111 (CA 5, 1966).

As we have indicated earlier, the Secretary's burden did not end merely by showing that plaintiff had some residual capacity for gainful employment. It was also incumbent upon him to establish that there existed within the vicinity of plaintiff's residence work and jobs within his competence and reduced abilities. Massey v. Celebrezze, 345 F.2d 146, 154 (CA 6, 1965); May v. Gardner, 362 F.2d 616, 618 (CA 6, 1966).

To satisfy this duty, the Secretary produced one James P. Fort, Jr., a vocational expert who was present throughout the taking of testimony before the examiner and had an opportunity to observe the plaintiff. He had reviewed all of the medical reports and testimony. The examiner asked Fort whether, in his opinion, jobs existed in the Knoxville metropolitan area which plaintiff could perform, taking into account his impairment, which precluded work involving other than occasional walking and standing for periods varying from fifteen minutes to several hours at a time, his residual capacities, his age, education, and prior work experience. Fort's answers are fairly summarized in this quotation from the examiner's decision:

"Mr. Fort responded that most of claimant's working had been in the common labor classification and that he had developed little if any 'transferrable knowledge'. He called attention that claimant's limited education would have to be considered in determining what jobs he could do. He concluded that claimant should be able to perform jobs that are essentially observational or manipulative in nature and that require no previous experience or education other than a brief period of verbal instruction or demonstration and that at best such jobs could be of a semi-skilled nature. He listed among the jobs that he believed that claimant can perform the job of inspector of plastic products. This job involves examining plastic products, both assembled and non-assembled, for defects such as blisters. There are several plants in the Knoxville metropolitan area that produce a variety of plastic products where it it reasonable to believe that this kind of job exists. He also expressed the opinion that claimant should be able to work at a variety of assembly jobs, such as the assembly of electrical and plastic products. The 1960 census report shows that there are a little over 200 men employed assemblers and about 381 men employed as checkers, examiners and inspectors in the Knoxville metropolitan area. He commented that the employment conditions may vary from plant to plant, that not all the jobs are necessarily of a sedentary nature, and that in some plants they

may be performed standing, or partially standing and partially sitting. He also called attention that assembly jobs range from relatively simple jobs to rather complicated jobs. He also expressed the opinion that there are jobs that are customarily referred to as 'janitorial or custodial' which claimant should be able to perform. There were 1,436 men employed in this classification in the Knoxville metropolitan area according to the 1960 census. Mr. Fort also called attention to the existence of several types of jobs in the bakery industry that are very simple, light in nature, and can be easily learned, but involve standing. One such job is a helper on the slicing and wrapping machine. This is an individual who places the loaves of bread into the slicing and wrapping machine. Another classification is a 'bun wrapper' which involves placing buns into plastic bags. A third type of job that is commonly found in the bakery industry which he believed that claimant could perform was that of a 'roll making machine helper'. This is an individual who takes the rolls off the forming machine and places them in pans on a belt. He stated that the type of jobs he had been describing, which were samples of jobs that he believes that claimant can do, do not exist in what he would characterize as 'significant numbers' in the Knoxville metropolitan area; however, that they do exist in large numbers in the national economy. He stated that he had no specific figures for Anderson or Campbell Counties; however, that he knew that there was not much industrial employment in those counties with the exception of Oak Ridge. He also stated that it is his understanding that the majority of the individuals who are employed at Lake City (community near which claimant resides) commute to their jobs at Knoxville, a distance of 20 to 30 miles. Mr. Fort conceded that he did not know of a specific job in a specific plant that would be available to Mr. Lane as he was merely testifying to the existence of jobs rather than vacancies in such job classifications."

From this, the examiner found that "there are jobs in the Knoxville area * * * that claimant is able to perform despite his lack of education, the impairment of his right leg which necessitates that he wear a drop-foot brace, and the evidence of tenderness in his back." Whatever we have said on the duty of the Secretary to point to *available* jobs, we do not consider that this rule requires proof that the particular plaintiff with his particular injury—a drop-foot—could obtain a presently open job at some named and identified commercial enterprise, if he applied for it. Celebrezze v. Bolas, 316 F.2d 498, 507 (CA 8, 1963); Kirby v. Gardner, 369 F.2d 302, 305 (CA 10, 1966).

Evidence which had been given at plaintiff's workmen's compensation hearing by a Mrs. Jean Parker, manager of the Tennessee Department of Employment Security Office, Oak Ridge, was received at the examiner's hearing. This evidence challenged, in part, the testimony given by the Secretary's witness Fort. Without attempting critical analysis of the testimony of the witness Parker to disclose the degree of its inapplicability to the case at issue, we merely observe that to the extent that it was relevant, the examiner stated that he "would have to reject her views." Such rejection was, unless wholly insupportable, within the factfinder's prerogatives. We do not find reason to set aside his resolution of the involved issue of fact.

While the District Judge recited his recognition that the question for his decision was whether there was substantial evidence to support the Secretary's decision, he concluded as follows:

"It is difficult for the Court to believe from the evidence that this somewhat emaciated man with an atrophied leg which one doctor said carried 65% disability with no more education than he had and with the fairly limited job experience that has been his, is not disabled for substantial gainful activity."

  Relevant to these observations, we point out that this young man, prior to his injury, was 6 feet 1 inch tall and weighed only 145 pounds. This with the loss of ten pounds, the atrophy of his injured leg and the fact that he attempted no work in the four years that preceded the hearing, could well. be conducive to the appearance of a "somewhat emaciated man." The applicable rule, however, forbids de novo consideration of plaintiff's case, and it is, therefore, immaterial whether we would entertain the same difficulty as did the District Judge. King v. Celebrezze, 341 F.2d 108, 109 (CA 6, 1965). Only when the law permits it may we use our writ to assuage the hurts that come unbidden to our fellow human beings.

The judgment of the District Court is vacated with direction to enter an order dismissing the complaint.

EDWARDS, Circuit Judge (dissenting).

I dissent for the reasons set forth in the Memorandum Opinion of the District Judge.