**Herman LAIRSON, Plaintiff,**

v.

**Wilbur J. COHEN, Secretary Health, Education and Welfare, Defendant.**

**No. 1749.**

United States District Court
E. D. Kentucky,
Lexington Division.

Oct. 9, 1968.

Sidney N. White, Lexington, Ky., for plaintiff.

George I. Cline, U. S. Atty., G. Wix Unthank, Asst. U. S. Atty., Lexington, Ky., for defendant.

MEMORANDUM

SWINFORD, Chief Judge.

The plaintiff, Herman Lairson, brings this action under the provisions of 42 U.S.C. § 405(g). He filed his application for disability insurance benefits on January 13, 1965. The application was processed administratively and on May 14, 1965, the application was denied. Reconsideration was denied and on July 27, 1966, the plaintiff requested a hearing. Hearings were thereafter held on September 27 and October 31, 1966, at which the plaintiff was present with his attorney of record, Mr. Sidney N. White. On November 9, 1966, the hearing examiner held that the claimant was not entitled to a period of disability benefits. A request for review was made and on January 6, 1967, the request was denied by the Appeals Council. The decision of the hearing examiner thus became final and this action was filed on February 10, 1967.

On March 28, 1967, on motion of the defendant, the case was remanded to the Secretary under the provisions of 42 U.S.C. § 405(g). Upon remand, a supplemental hearing was held on September 7, 1967. At this hearing the plaintiff was present with his attorney, Mr. White, and again testified at some length. The testimony of a vocational expert was also offered. The hearing examiner, in a decision reciting all the material facts of the case, held that the claimant was not entitled to a period of disability. (Tr.—5–16). This decision was adopted by the Appeals Council on November 28, 1967 and became the final decision of the Secretary.

On January 8, 1968, on motion of the Secretary, the case was redocketed, an answer was filed, and the record is now before the court on the motions for summary judgment filed by the defendant and plaintiff, respectively. The court also has before it the transcript of the proceedings, including exhibits and re-

lated documents, and briefs filed by each party.

The plaintiff is now 54 years of age and has a fourth grade education. Although he grew up on a farm and learned to do the usual farm work, he was employed as a machine operator in a Cincinnati steel plant making aircraft shells in 1937 and 1938. There is some indication that he did other industrial work, but this is not clear from the record (Tr—80). He was a tenant farmer for twelve years and raised tobacco and corn. About 1950 he began work as a nurse's aide at the Eastern State Hospital (a mental hospital), Lexington, Kentucky. This work was done from 2:30 in the afternoon until 11:00 at night during the same period he worked for the City of Lexington as a garbage truck driver in the early morning hours. In November of 1964 he stopped working because of "weakness from several operations due to floating stomach" (Tr—173). In April of 1965 he returned to work and worked until September 1965. At that time he had thrombo-phlebitis. On October 12, 1965, his attending physician, Dr. Lloyd O. Larsen, stated that he had "complete recovery" (Tr—227). His only restriction was to avoid leg strain. A later report by Dr. Larsen, dated April 4, 1966, stated (in relation to the thrombo-phlebitis) "when last seen I estimated Mr. Lairson would be able to resume all activities by 1/1/66." (Tr—235).

On December 2, 1965, Dr. Theodore L. Adams, after examination and evaluation of the plaintiff, recommended that he be placed on the retired list and "that he be given the fullest pension commensurate with both his state of health and his age." (Tr—245). This resulted in his terminating his employment with the city on a disability basis. Since that time he has worked only "an hour and a half" trying to cut tobacco (for which he earned $1.60) but his legs and arms "give out" on him (Tr—90).

The plaintiff has had numerous operations, four of them major. He has had an appendectomy, three operations for hiatus hernia, surgery for diverticulosis of the ascending colon, section of bowel removed, and a tumor of the left arm removed.

The record discloses that from 1959 to 1963, the plaintiff had an acute drinking problem. He sought treatment for this at the Eastern State Hospital (where he was employed) and was admitted on a voluntary basis on at least two occasions. The report of Dr. E. L. Fraser on July 26, 1963 states that "(D)uring his hospitalization however he developed excellent insight and assured this examiner that he would completely abstain from alcohol. He was discharged on 7/26/63 and will continue on Librium 25 mgs. tid." (Tr—265). Apparently this psychiatrist was correct as the plaintiff stated on September 7, 1967, that he hasn't drunk any alcoholic beverages for over three years. This statement is not disputed (Tr—144).

On September 12, 1966, Dr. Cleto Elequin, Jr., Chief, Psychiatric Services, Fayette County Program, reported that his organization (through the Eastern State Hospital) has been working with the plaintiff since December 1965. He stated that he is being maintained on medication and supportive psychotherapy. Dr. Elequin further states, "I feel that his emotional problems are only a contributing factor with regards to his inability to find and hold a job. His physical and medical problems, especially the major operations he has had, are the dominant factors in this case." (Tr—248).

The plaintiff has been—what may be termed—an out patient at Eastern State Hospital since 1965. He goes periodically for a check up and to get a prescription for his medicine. The medicine he takes for his nervousness is Mellaril. This tranquilizer has an inhibiting effect and he takes 100 milligrams three times a day.

He describes his stomach condition in lay terms. At the hearing on September 7, 1967, in answer to the examiner's question: "When you say your stomach

may dump on you what do you mean by that?", he replied: "Well, it's when I eat. I just get sick on it, and it dumps the food out of my lower bowels and it gives me a runnin' off." This happens two or three times a week.

In the medical report of Dr. James S. Rich, of July 10, 1967, this is stated more scientifically: "Preliminary chest fluoroscopy shows rather marked elevation of the left hemi-diaphragm * * * I have the impression that the elevated left hemi-diaphragm and unusual position of the stomach and its rapid emptying are all on the basis of previous surgical operations.

> IMPRESSION: 1. Eventration of the left hemi-diaphragm with elevation of the stomach but no definite peptic ulcer.
>
> 2. Gastric hyper-peristalses and hyper-motility."

(Tr—270).

———◆———

Dr. Stanley Hadley, Jr., who has had the plaintiff under his care and observation at various times since 1961, states that his symptoms and complaints fall into three broad categories: hiatus hernia, stomach trouble, and phlebitis. "The overall effect of these disorders is to make it practically impossible for the patient to be employed in a gainful way." (Tr—242). He then goes on to discuss his reasons for this conclusion.

Dr. Lloyd O. Larsen, general surgeon, has operated on the plaintiff four times and treated him since 1959. Dr. Larsen's office makes the following report on his medical history:

"March 31, 1966

TO WHOM IT MAY CONCERN:

RE: HERMAN LAIRSON
537 WEST HIGH ST.
LEXINGTON, KY.

10/15/59—Surgery-Hernia.

4/21/64—Surgery-Reduction & repair of Hiatus Hernia.

8/10/64—Muscle spasm of left chest & shoulder area. Negative galvanic treatment with message.

11/27/64—Surgery-Diverticulosis & Diverticulitis of proximal sigmoid of the ascending colon.

9/21/65—Thrombo Phlebitis of right leg. Medication & rest.

/s/ R. Kelly, Sec'y

———◆———

Has had surgery on Hernia 3 times in (?) place of 2. One time not listed. Believed to be May 63." (Exhibit No. 36, Tr—234).

Dr. Thornton Scott examined the patient on May 19 and July 3, 1967. His report consists mainly of history and his physical examination indicates that the

plaintiff is practically normal in most respects. He lists operative scars and concludes his report with the following opinion:

"In my opinion this man has a considerable physchiatric problem and is obviously suffering from the psychic consequences of much surgery. He does not have a diaphragmatic hernia now or symptoms of one. He does not give the story for dumping syndrome though he and his wife use the term freely and frequently. There is no physical evidence that he ever had phlebitis and his history is not characteristic of it." (Tr—273).

Dr. Irving A. Gail, psychiatrist, gives a diagnosis of "anxiety reaction, Mild." (Tr—277).

The testimony of Dr. Richard F. Hench was given at the hearing on October 31, 1966. Dr. Hench is a Medical Advisor to the Bureau of Hearings and Appeals whose function in this case was to assist the hearing examiner in evaluating the medical evidence as of the date he testified. He had never examined or treated the plaintiff (Tr—103). He based his testimony on the record, and, admitting the medical problems which the plaintiff has had, was of the opinion that he was capable of maintaining regular employment with qualifications— not to lift in excess of 60 pounds, remain under medical supervision, wear an elastic stocking if his leg swells, avoid trauma to his legs, and not operate a car while taking large doses of tranquilizers. He also stated that a man with varicose veins "* * * as I believe Mr. Lairson does from the record", always has a possibility of recurrence of phlebitis.

On cross examination by the plaintiff's attorney, Dr. Hench stated that it was obvious from the three operations for repair of the hiatus hernia that "they had difficulty fixing it and making it stick, so this would indicate the possibility that recurrence exists." (Tr—114). And further, "* * * a man could have a hernia fixed and get a good repair and everything looks fine except he still has some trouble, maybe not as much, but he still has symptoms because this one way valve is no longer a one way valve, it is letting things leak back into the esophagus." (Tr—116).

"I imagine a patient would be pretty reticent trying the fourth time as far as repairing it again." (Tr—122).

It would serve no purpose for the court to further elaborate the facts as set out in this lengthy transcript consisting of 281 pages.

Judicial review under 42 U.S.C. § 405(g) is limited to inquiry whether there is substantial evidence in the record as a whole to support the findings of the Secretary. Lane v. Gardner, 6 Cir., 374 F.2d 612.

The Secretary has held that the plaintiff is not entitled to a period of disability benefits.

The term "disability" means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(c) (2) (A).

The court is of the opinion that the record contains substantial evidence in support of the conclusion that the plaintiff is unable to "engage in any substantial gainful activity" in his present condition and while there is evidence in support of the Secretary's contrary finding, it is not, considering the record as a whole, substantial evidence as defined above. Combs v. Gardner, 6 Cir., 382 F.2d 949 (1967); York v. Gardner, 6 Cir., 397 F.2d 209 (1968).

The hearing examiner, in his decision of October 8, 1967, seems to rely to a large degree on the report of Dr. Thornton Scott. Dr. Scott examined the plaintiff on a consultative basis at government expense as a Board-qualified internist. As set out above, Dr. Scott's report indicates that the plaintiff is

practically normal. This evidence is clearly refuted by other substantial medical testimony in the record. It is not disputed that this claimant has had four major operations to correct his stomach and digestive problems. Three of these operations, which were for repair of a hiatus hernia, were done in an effort to improve this condition. He still has the trouble and, according to the proof, this is a major cause of his psychiatric problems.

This is not a case where the claimant has not made an effort to correct his physical condition. However, the pain and discomfort continues and he has become unable to cope with the physical effort of carrying on in a gainful activity. He also has varicose veins, a history of thromo phlebitis and diverticulitis. His weight has dropped from 180 pounds to 140 pounds.

Dr. Hench, who stated that the plaintiff was capable of maintaining regular employment, qualified this conclusion with so many requirements on the part of the plaintiff that his opinion becomes very unrealistic. While there are many available jobs, as testified to by Mr. Ronald G. Hampton, vocational expert, the court is of the opinion that this plaintiff is not physically or mentally capable of being gainfully employed within the meaning of the law. An applicant need not be bedridden or completely helpless in order to fall within the definition of "disability". Walston v. Gardner, 6 Cir., 381 F.2d 580 (1967).

The plaintiff has carried the burden of establishing that he is entitled to benefits under the Act. The defendant's motion for summary judgment in his favor should be overruled. The decision of the Appeals Council should be reversed and the case remanded to the Secretary, Department of Health, Education and Welfare, with directions that the plaintiff be granted a period of disability insurance benefits in accordance with the Social Security Act, as amended.

An order in conformity with this memorandum is this day entered.