Freeman L. PATTERSON, Plaintiff,

v.

Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. C 68–807.

United States District Court,
N. D. Ohio, E. D.

Jan. 19, 1970.

John R. Barrett, Harris, Wise, Barrett & Ferguson, Akron, Ohio, for plaintiff.

Robert B. Krupansky, U. S. Atty., Harry E. Pickering, Asst. U. S. Atty., Cleveland, Ohio, for defendant.

## MEMORANDUM

WILLIAM K. THOMAS, District Judge.

Claimant Freeman L. Patterson appeals from the denial by the Secretary of Health, Education and Welfare of the claimant's application for a period of disability and disability insurance benefits under the Social Security Act. The claimant filed his appeal under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) (1969).

Initial and reconsidered determinations of the Social Security Administration, Department of Health, Education and Welfare, held that the claimant was not entitled to a period of disability or to disability insurance benefits. On request claimant was granted an oral hearing on June 19, 1968. The claimant and his wife testified, and medical reports, hospital records, and other exhibits were introduced into evidence. On July 22, 1968, the hearing examiner filed his decision denying Patterson's claim. On August 28, 1968, the Appeals Council, without a hearing, decided that the decision of the hearing examiner was correct and allowed it to stand as the final decision.

Certain evidence, either undisputed or uncontradicted, constructs the factual framework of this appeal.

The claimant, a 53-year-old male, worked as a bus driver for the Akron Transportation Company for 23 years. On September 16, 1966, a collision occurred while he was operating a company bus. He was thrown head first across the steering wheel. His head broke out the windshield. He lost one tooth and a nerve had to be removed from a second tooth. He was subsequently treated by the bus company's doctor for sprains of the back, neck, and left shoulder.

The doctor released him to return to work on October 24, 1966. The claimant resumed his bus driving job. However, he worked less than full time because of his physical condition. On January 4, 1967, he ceased bus driving except that he worked less than a full day on June 19, 1967 and June 21, 1967. Asked why he is unable to work, he stated "I have this awful pain in my chest and I'm shortwinded and pain in my back and my leg gets numb. It goes to sleep." He

says he "has shooting pains in my lower back, and my hip and down my leg."

Claimant continues to live on a 13-acre farm with his wife and family.

Under the Social Security Act disability benefits cannot be provided unless claimant satisfies the requirements of Section 223(d), 42 U.S.C. § 423(d) (1969). In the words of this section, to qualify for benefits an applicant must demonstrate an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which * * * has lasted * * * for a continuous period of not less than 12 months.

The term "physical or mental impairment" is limited to

> an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

A further qualification is imposed by the language that

> an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, work experience engage in any other kind of substantial gainful work which exists in the national economy, * * *.

■ In qualifying for benefits a claimant must be able to fit himself within the statutorily defined category, and the claimant has the initial burden of so doing. Specifically, the claimant must prove that he is or was for a period of one year unable to work at his usual occupation. If the claimant is unsuccessful in proving this, he will fail to recover benefits. If the claimant, however, can establish inability to perform his usual occupation, the burden shifts to the Secretary. May v. Gardner, 362 F.2d 616 (6th Cir. 1966). The Secretary must then adduce evidence showing that the claimant is able to engage in some other kind of substantial gainful activity which, under the recent amendments to Section 223(d) (2) (A) of the Social Security Act, 42 U.S.C. § 423(d) (2) (A) (1969), exists in the national economy.

The hearing examiner's final findings of fact and conclusions of law states:

> At no time during the effective period of claimant's application * * * did or does the claimant have physical or mental impairments, either singularly or in combination, of such severity or longevity as to preclude the claimant from engaging in any substantial gainful activity.

There is no evidence in the record indicating what type of employment other than bus driving the claimant might be able to perform. However, the examiner does find:

> Although claimant makes complaint of a multiplicity of impairments the record wholly fails to reveal any significant medical reason for claimant's alleged inability to continue in his work as a bus driver, nor the existence of any impairments of such singular or combined severity as to preclude the continued performance of such work activity.

This court must determine whether the hearing examiner's finding that nothing precludes the claimant from continuing his work as a bus driver is supported by substantial evidence in the record. Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1969) requires a district court on appeal to affirm the Secretary's decision if he has applied proper law and if his findings are supported by substantial evidence.

The examiner's summary of the medical evidence and his evaluation of the evidence will be considered in light of the whole record.

Following claimant's injury of September 16, 1966, he was treated by Dr. Adrian Davis.

The examiner observed that "claimant's own orthopedic surgeon," Dr. Adrian E. Davis, issued a "prescription

blank" report (actually on small note-head paper), dated October 20, 1966, stating that claimant has been under his "professional care for treatment of back, neck and left shoulder. He may return to work on October 24, 1966." In his evaluation of the evidence examiner repeats the same findings of Dr. Davis, characterizing him as "claimant's own orthopedic surgeon Dr. Adrian Davis." In fact Dr. Davis examined the claimant as the doctor of the Akron Transportation Company, claimant's employer and a self-insurer under Ohio's Workmen's Compensation Act.

As one of the points in his evaluation of the evidence the examiner stresses Dr. Davis' statement that claimant "may return to work on October 24, 1966." He fails to note that the claimant told Dr. Davis that he "wanted to go back to work." Also, the examiner ignores the claimant's testimony explaining why he stopped seeing Dr. Davis. He testified that after he returned to work he "only worked six weeks or a couple of months * * * then I went back to see Adrian Davis and Adrian Davis had went on a long vacation and I'd been referred to Dr. Walter Hoyt * * *."

The examiner devotes one paragraph in the section of his opinion, entitled "Medical Evidence," to Dr. Walter Hoyt's treatment of the claimant and the doctor's findings, diagnosis and prognosis. The examiner completely ignores Dr. Hoyt in his evaluation of the evidence. As the only month-to-month medical account of the claimant's condition it is essential to quote Dr. Hoyt's notes in some detail.

In the "Medical Evidence" section the examiner notes that "claimant's Boarded [American Board of Orthopedic Surgery] orthopedic surgeon reported that claimant came under his care on September 16, 1966 for an industrial injury." Dr. Hoyt did so report to the Secretary. However, examination of Dr. Hoyt's medical notes (presumably not undertaken by the examiner) reveals that he first saw the claimant on February 22, 1967, and that "pt. had a collision 9/16/66 while driving a bus intercity, on the road to Ravenna." The doctor's notes show that "on physical exam this pt. does have tenderness and parespinal muscle spasm in the midcervical region * * * [neck] is painful with extremes of flexion and hypertension * * * on examination of low back he has no spasm of muscle but pains with extremes of flexion, right and left lateral deviation."

Dr. Hoyt's medical notes for February 22, 1967, further record "xrays show some degenerative arthritic chgs probably compensatory with his age and old problem in the back. This current problem is that of a strain, superimposed on this preexisting problem." (Ten years earlier, Dr. Hoyt's medical notes reveal, claimant had back trouble and was fitted with a lumbosacral back support.)

The claimant received eight physiotherapy treatments at Dr. Hoyt's office from February 22, 1967 to March 29, 1967. On April 30, 1967, he was admitted by Dr. Hoyt to Akron City Hospital "with possible herniated disc." On May 4, 1967, he was discharged after "conservative treatment some partial relief of symptoms, may continue with brace and recheck by me in 3 wks. Question of work at that time." On different dates in 1967 and 1968 Darvon was prescribed for pain, and Doriden for sleep.

On June 15, 1967, Dr. Hoyt's medical note stated, "Patient may return to work as of 6–19–67 * * * new brace was applied." One June 28, 1967, a note by Dr. Hoyt's associate reads "He drives a city bus and he hardly can do the job * * * The brace does not help him. This case will be discussed with Dr. Hoyt and with his company." On July 12, 1967, a letter to the Industrial Commission of Ohio (for present purposes same as Ohio Bureau of Workmen's Compensation) advised "exploration of L4 and L5, S1 disc spaces and lumbo sacral fusion is indicated." A note on September 21, 1967, states, "The patient remains about the same. He is now filling

in disability for pension and will be followed by us in about another 6–8 weeks."

A note by Dr. Hoyt dated November 20, 1967 states: "This patient was declared totally disabled until 10–29–67 by the ICO [Industrial Commission of Ohio] and the Akron Trans. was requested to pay for same. He is not working as yet, he has considerable muscle spasm with associated limitation of motion of his back and is having radicular pain into his left lower extremity. On examination he has definite hypesthesia over the lateral aspect of the extremity indicating nerve root compression. The reflexes are hypoactive but equal throughout. This patient is also known to have emphysema and according to Dr. Kunz he has a phlebitis. I believe he remains totally disabled. I advised him as regards activities, try to gradually increase same and recheck again in several months."

In a report dated January 8, 1968, to State of Ohio Bureau of Workmen's Compensation, Dr. Hoyt noted "Considerable muscle spasm with associated limitation of motion of his back" and "radicular pain into his left lower extremity." He was asked to state on the form if the claimant has been totally disabled and the date "you estimate he may be able to return to work." He answered, "yes, totally disabled and will remain so until approximately 3–1–68." The last medical note by Dr. Hoyt is an evaluation dated February 29, 1968. It reads "He has persistent back pain into both lower extremities and the posterior thighs."

Dr. Hoyt's findings from February 22, 1967 through February 29, 1968, establish claimant's inability to engage in his work as a bus driver for a period more than 12 months "by reason of * * * medically determinable impairments." Muscle spasm, clearly on objective medical finding, and therefore certainly medically determinable, is repeatedly found by Dr. Hoyt during his care and treatment of the claimant. His medical notes reveal other "medically determinable" findings as well.

Other medically determinable findings, though not mentioned by the examiner, appear in the hospital records to which he only generally refers. The examiner notes that claimant was in Akron City Hospital three times; that he was treated August 20 to 25, 1966 for pyelonephritis; that he was treated from April 30 through May 14, 1967 for causalgia (burning pain due to injury to peripheral nerve and lumbar ligamentous strain, and discharged improved; that he was "readmitted to that facility from March 4 to March 16, 1968 for duodenal diverticulum, pulmonary fibrosis, and disc rupture." In fact the 1967 admission was because of a provisional diagnosis of "herniated ruptured disc" and listed by the examiner were the final diagnoses. The 1968 admission was because of "persistent chest pain" and the final diagnoses are the conditions listed by the examiner. He fails to note that the 1968 diagnosis of disc rupture relates to the cervical spine (C6 level) thus distinguishable from the lumbar condition that precipitated the 1968 hospital confinement. The claimant's attending physician, F. C. Kunz, ordered the 1968 hospitalization and concurred in the findings.

Other medically determinable findings contained in the hospital records were not mentioned by the hearing examiner. Both the 1967 and 1968 reports of the chest x-rays show mild pulmonary fibrosis. The x-rays from the 1967 hospital stay show moderate spurring at the cervical six-seven level, more marked to the right, and mild impingement on the neural foramina on the right at the cervical sixth level. The lumber bodies reveal minimal osteoarthritis with marginal spurring but with no interspace loss; and the lumbosacral articulations, bilaterally, show mild sclerotic bone reaction with minimal narrowing.

Spinal x-rays taken during the 1968 hospital stay reveal a narrowing of the 5th cervical interspace and an upper dorsal scoliosis. A stomach and small intestines x-ray taken during the 1968 stay indicates mild gastritis, a duodenal

diverticulum, and moderate duodenitis at the level of the duodenal diverticulum.

Physical examinations in the 1967 hospital record disclose a cervical condition and hypesthesia from C5 down and lumbar muscular ligamentous strain. The 1968 hospital records lists enlarged prostate, tender cervical spine and tender lower lumbar spine.

The examiner determined that "the record wholly fails to reveal any significant reason for claimant's alleged inability to continue in his work as a bus driver * * *." Testing this determination against Dr. Hoyt's findings of the claimant's physical impairments and his evaluation that the claimant is totally disabled, it is plain that the examiner refuses to regard as part of the record the findings of the orthopedic surgeon who has treated and cared for the claimant for over a year.

Instead, the examiner's determination that the record fails to reveal any reason why claimant cannot drive a bus is obviously based on the findings of several doctors who examined the claimant at the request and expense of the Government. One of these is Dr. C. J. Paquelet, a Massillon orthopedic surgeon, not Board certified as is Dr. Walter A. Hoyt, Jr. The examiner prefaces his reference to Dr. Paquelet by saying:

> In order to obtain the clearest possible picture of claimant's medical condition he was examined at government request and expense on October 12, 1967 by Dr. C. J. Paquelet, an orthopedic surgeon.

The hearing examiner's preface does not thereby render Dr. Paquelet's single examination and report authoritative merely because the Goverment requested and paid for Dr. Paquelet's services. This preface unsupported in the record, however does convey the examiner's prejudged acceptance of Dr. Paquelet's results. Significantly, Dr. Paquelet's history of the bus accident speaks only of the claimant striking "his head upon the windshield," not of breaking it out, and of his injuries only as being "somewhat dazed." This version of minimal violence and injury differs from claimant's consistent account of a broken out windshield and loss of a tooth that appears everywhere else in the record.

The hearing examiner recites various negative findings of Dr. Paquelet and then quotes the doctor's conclusion:

> At this time, I am unable to find any evidence of neuromuscular disease in this man. Considering only this man's subjective complaints, it is conceivable that he may suffer from a ruptured intervertebral disc or perhaps a chronic lumbo-sacral sprain, as a result of the accident in question. However, once again, I am unable to substantiate this diagnosis objectively at this time.

In his evidence evaluation of the examination by orthopedic surgeon Dr. C. J. Paquelet on October 12, 1967, the hearing examiner mentions only the doctor's lack of "substantiation of claimant's subjective back complaints." He does not acknowledge that Dr. Paquelet says that it is conceivable the claimant may be suffering "from a ruptured intervertebral disc or perhaps a chronic lumbo-sacral sprain, as a result of the accident in question." Moreover, it is significant that Dr. Paquelet, though probably not asked, does not express an opinion that the claimant is physically able to carry on the duties of a bus driver.

As to Dr. Paquelet's supporting x-ray studies (by Dr. Breyfogle, a Massillon radiologist) the hearing examiner says they "were essentially normal." This characterization ignores the radiological finding that "lumbosacral disc space shows very slight reduction." It also ignores the absence of x-ray studies of the claimant's cervical spine.

At the request and expense of the Government, Dr. Marvin J. Sakol, an Akron specialist in internal medicine, examined the claimant on January 10, 1968. The first sentence of his report generally summarizes his findings:

> He has had numerous complaints referable to virtually every organ system for many years, but was relatively able

to function until an auto accident September 16, 1966, at which time he suffered the loss of two teeth and "injured the low back."

Dr. Sakol concludes his report as follows:

Impressions:

1. Mild pulmonary emphysema
2. Lumbosacral sprain
3. Severe anxiety syndrome

In my opinion his functional capacity is more limited by his emotional status than by any organic disease.

The hearing examiner quotes this last opinion of Dr. Sakol in his evidence evaluation. But he fails to note that Dr. Sakol does not say or conclude that the claimant is faking or staging his "severe anxiety syndrome." Moreover, the hearing examiner ignores the relevant point that a "severe anxiety syndrome" may be a "mental impairment" capable of disability cognizable under Section 223(d) of the Social Security Act, 42 U.S.C. § 423(d) (1969). See, Branham v. Gardner, 383 F.2d 614 (6th Cir. 1967). Finally, it is noteworthy that Dr. Sakol, though probably not asked, does not express the opinion that the claimant is physically and mentally able to resume and continue his duties as a bus driver.

Further in his evidence evaluation the hearing examiner concludes:

The claimant's daily activities including attendance to all of his own needs, walking in the fields, tending to his chickens, dogs and tomatoes, and driving his car in city traffic, contraindicate a finding that claimant is or was disabled * * *.

This evaluation ignores the marked reduction in the claimant's daily activities since the date of his accident, September 16, 1966. On his 13-acre farm before his accident he kept about 75 chickens. Now he has 14. Before the accident he raised 1200 to 1300 tomato plants. Now he plants a dozen. He used to raise whitefaced cattle. Now he has none. He used to have a beautiful garden. But no more. His activity in the small garden that remains is to sit on a stool and pull a few weeds. He does drive a private automobile with automatic transmission to and from his doctors' offices. But there is no evidence in the record that this restricted driving of his private car is comparable to the driving duties required in operating a city bus.

Finally, the evidence evaluation of the hearing examiner states:

The Hearing Examiner further notes that claimant receives $49.00 per week from the Ohio Bureau of Workmen's Compensation, and has a pending court case arising out of his September 16, 1966 collision, which circumstances reflect adversely upon claimant's motivation to resume employment until such events have run their course.

No evidence in the record, medical or otherwise, supports this statement. A trier of the facts, whether judge or hearing officer, frolics beyond the bounds of his competence when he makes such a statement without any medical foundation in the record.

■ Furthermore, as to the receipt of $49.00 per week from the Ohio Bureau of Workmen's Compensation, it is true, as the Assistant United States Attorney argues, that "this fact is not determinative of the issue in this case." Nevertheless, the hearing examiner misses the unique aspect of this allowance. Claimant's employer, Akron Transportation Company, a self-insurer, has not disputed but instead has accepted Dr. Walter A. Hoyt, Jr.'s evaluation of the claimant as "totally disabled." Claimant's own employer's acknowledgment that claimant is unable to drive a bus conclusively establishes that he is unable to perform his usual occupation. Furthermore, it has been seen that none of the government-chosen doctors whose examinations and findings of the claimant the hearing examiner relies on, have expressed an opinion that the claimant is able to engage in the duties of a bus driver. Hence, this record does not contain substantial evidence to support the examiner's conclusion that claimant is able to operate a bus.

The record does show that the claimant has a limited education (fourth grade) and that his only work training is bus driving. Nevertheless, the record is not complete enough to determine whether the claimant is so disabled that he is incapable of performing any other work of substantial gainful employment existing in the national economy. The case, is therefore, ordered remanded to the Secretary for a determination of this question, Lane v. Gardner, 374 F.2d 612 (6th Cir. 1967) and May v. Gardner, *supra*. On remand it may also become relevant to receive evidence as to any claim of a disability beyond March 1, 1968.

Having determined that the decision of the Secretary is not supported by substantial evidence, the Government's motion for summary judgment is denied and the case is ordered remanded for action consistent with this opinion.