826 F.2d 1063
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul HOOD, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-1056.
 United States Court of Appeals, Sixth Circuit.
 Aug. 21, 1987.
 
 Before RYAN and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Paul Hood underwent two laminectomies, in 1974 and 1980, and removal of a spinal tumor in 1976. He last worked in November 1978 as a press operator. He had done that job for about 8 years. Before that, he interpreted engineering blueprints and specifications for application at the local plant level. He has been diagnosed as having compressed nerves in the thoracic region, bilateral cataracts and depression. Following a hearing in June 1984, an Administrative Law Judge (ALJ) denied Hood's claim in July 1984. In October, the Appeals Council denied a request for review. In November 1985, the district court for the Eastern District of Michigan adopted a magistrate's report recommending that the Secretary's finding be affirmed. We hold that the Secretary's determination was supported by substantial evidence, and we therefore AFFIRM.
 
 
 2
 * In July 1985, Dr. Michael McAuliffe, an internist, diagnosed Hood as having a moderately to markedly limited range of motion secondary to his back, with moderately limited range of motion to the neck. Dr. McAuliffe agreed with and adopted the diagnoses of Dr. Andrea C. Jungwirth, M.D., who, in November 1981, found evidence of compressed thoracic nerves, and a history of multiple surgeries with resultant symptoms of pain and numbness. Dr. Jungwirth stated that "Mr. Hood is currently disabled from any occupation that he take part in [sic] but should be reevaluated in approximately one year. He should not do any sitting, standing or walking or driving more than one hour, lifting or reaching above his head, or lifting any weight more than 10 lbs. frequently."
 
 
 3
 X-rays taken in July 1983 confirm narrowing of Hood's 5th cervical disk space and of the lumbosacral disk space with considerable sclerosis and hypertrophic spurring. Hood suffers from bilateral cataracts. The left lens was removed and an intraocular lens implanted in July 1983.
 
 
 4
 Psychological tests performed by Dr. Thomas S. Rosenbaum, Ph.D. in January 1979 showed anxiety and a mild concentrational deficit. The Secretary's consultative psychiatrist, Ho Suck Song, M.D., examined Hood in September 1983 and concluded that he had been depressed for many years, had suicidal potential, and had prolonged reactive depression, thoracic outlet syndrome, and chronic alcoholism.
 
 
 5
 At his hearing, Hood testified to the extent and severity of his pain. The Secretary's vocational expert testified that Hood would be qualified to perform in approximately 22,000 jobs which existed in Michigan, primarily bench work in assembly and inspection, assuming that Hood had a sit-stand option.
 
 
 6
 The ALJ found that Hood suffered from severe post-laminectomy syndrome and thoracic nerve compression, and that these impairments would prevent him from returning to his past work as a press operator or office worker. The ALJ concluded, however, that Hood retained the ability "to perform the physical exertional and non-exertional requirements of work, except for work requiring sitting, standing or walking for more than one hour, lifting more than 10 pounds frequently, or the use of his arms in an overhead position." The ALJ found that Hood's complaints of pain could not be accepted to the extent inconsistent with that conclusion. He ultimately decided that although Hood could not perform the full range of sedentary work because of his need for a sit-stand option, there would be jobs he could perform and therefore he was not disabled.
 
 II
 
 7
 The question before this court is whether the Secretary's denial of Hood's claim is supported by substantial evidence--evidence which a reasonable mind can accept as adequate to support the conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). The court is not to render a de novo determination. Lane v. Gardner, 374 F.2d 612, 616 (6th Cir.1967); 42 U.S.C. Sec. 405(g). However, the court must ensure that the Secretary's decision is supported by the record as a whole. Beavers v. Secretary, 577 F.2d 383, 387 (6th Cir.1978).
 
 
 8
 Hood's primary argument is that the ALJ's rejection of Dr. Jungwirth's conclusion of disability was improper, because Jungwirth was an examining and treating physician, whose opinion is significant. Harris v. Heckler, 756 F.2d 431, 436 (6th Cir.1985). This argument fails for two reasons. First, Dr. Jungwirth's opinion that Hood was disabled is legal rather than medical in nature. The legal determination properly belongs to the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). Second, Drs. Jungwirth and McAuliffe reached both positive and negative clinical results. It was the ALJ's role to weigh such results and determine whether or not they showed that Hood was disabled. He did so and concluded that they did not support a finding of disability. Thus, even if Dr. Jungwirth's opinion is considered to be significant, the ALJ's decision on this issue can still be supported by substantial evidence.
 
 
 9
 Hood argues in the alternative that a finding that he is disabled is required by the symptoms which the ALJ accepted as true: the inability to sit, stand, or work for more than one hour, to reach or lift above the head, or to lift more than 10 pounds frequently. The key to this issue is Dr. Jungwirth's statement that Hood "should not do any sitting, standing or walking or driving more than one hour...." This statement is ambiguous as to whether Hood required merely the option of either sitting or standing as his physical needs required, or whether Hood could not sit or stand for more than a cumulative total of an hour per day. Hood misinterprets the ALJ's position, wrongly assuming that the ALJ blindly rejected the latter possibility. The ALJ was careful to distinguish between these two possibilities in the hypothetical questions he posed on each to the vocational expert. The record and the ALJ's opinion make it clear that he considered the latter possibility but rejected it, based on its ambiguity and on other medical findings in the record.
 
 
 10
 Hood's other arguments can be answered briefly. He asserts that the ALJ improperly rejected his testimony as to his pain. Although the ALJ acknowledged that Hood did experience pain, he did not credit his testimony as to its severity or frequency. It is within the ALJ's power to consider a claimant's credibility in light of his demeanor and the medical record. Beavers v. Secretary of Health Education and Welfare, 577 F.2d 383, 386 (6th Cir.1978). Hood argues that it is incorrect to reject a claimant's assertions of pain based solely on the claimant's behavior at the hearing. This is, of course, correct as a matter of law.
 
 
 11
 "While we recognize that observation and credibility are factors in this complicated equation, and as such are material, relevant, and admissible, we cannot allow the dismissal of a claim for pain solely on the ALJ's observations at the hearing. This procedure amounts to the infamous and thoroughly discredited "sit and squirm" test."
 
 
 12
 Weaver v. Secretary of Health and Human Services, 722 F.2d 310, 312 (6th Cir.1983). See also Harris v. Heckler, 756 F.2d 431, 436. However, the ALJ did not base his rejection "solely on the [his] observations at the hearing." Weaver, 722 F.2d at 312. We find that there was substantial evidence in the record, such as the absence of muscle spasms, doctor's care, or strong pain medication, from which the ALJ could and did conclude that Hood did not suffer disabling pain.
 
 
 13
 Similarly, we reject Hood's argument that the ALJ improperly failed to consider his emotional impairment. Hood argues that reports from Drs. Song and Rosenbaum that he was depressed and anxious were uncontradicted. The flaw in this argument is that Hood failed to assert that he had a disabling emotional problem. Thus, the disabling effect of an emotional problem alone was not properly before the ALJ. The ALJ did consider Hood's emotional health, and questioned Hood about depression. The report of consulting psychologist Rosenbaum indicates that Hood's emotional impairment was not disabling. The ALJ had sufficient evidence before him to support crediting the testimony of the vocational expert that Hood was qualified for substantial gainful work which exists in the national economy.
 
 
 14
 For these reasons, the decision of the district court is AFFIRMED.
 
 
 15
 RYAN, Circuit Judge, dissenting.
 
 
 16
 I agree with the majority's analysis as far as it goes, but because I feel Wages v. Secretary, HHS, 755 F.2d 495 (6th Cir.1985), requires a different conclusion, I respectfully dissent.
 
 
 17
 The ALJ determined that although Hood required a sit-stand option, he was capable of sedentary work.
 
 
 18
 In Wages, 755 F.2d at 495, this court addressed
 
 
 19
 "the issue of whether a claimant of social security disability benefits who cannot sit or stand for prolonged periods of time, but must alternate between sitting and standing as required for comfort, is capable of performing 'sedentary' work...."
 
 
 20
 Relying on Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984); Martin v. Schweiker, 562 F.Supp. 912 (D.Kan.1982); Davis v. Schweiker, 536 F.Supp. 90 (N.D.Cal.1982); Deutsch v. Harris, 511 F.Supp. 244 (S.D.N.Y.1981); S.S.R. 83-10; and S.S.R. 83-12, this court noted:
 
 
 21
 "several courts have held that a claimant cannot perform sedentary work if the claimant must alternate between sitting and standing."
 
 Id. at 498. Wages concluded:
 
 22
 "Because the evidence showed that Wages must be allowed to alternate between sitting and standing for her comfort, we find that there was not substantial evidence to support the ALJ's conclusion that Wages could perform sedentary work."
 
 
 23
 Id. at 499.
 
 
 24
 Likewise, in Howse v. Heckler, 782 F.2d 626, 627-28 (6th Cir.1986), this court determined:
 
 
 25
 "The ALJ's findings themselves reflect that the physical limitations occasioned by Howse's impairments preclude him from doing sedentary work. The record reflects and the Secretary found that Howse is incapable of sitting or standing for long periods of time. This circuit has held that sedentary work as defined by the Secretary's regulations contemplates substantial sitting as well as some standing and walking, and that alternating between sitting and standing, ... may not be within the definition of sedentary work....
 
 
 26
 * * *
 
 
 27
 "The evidence in the present case likewise shows that Howse's impairments preclude him from sitting or standing for long periods of time...."
 
 
 28
 This circuit has established a general rule that a claimant who is required to alternate between sitting and standing because of health problems is not capable of performing sedentary work. Although not specifically addressed by either Wages or Howse, an exception to this general rule could be derived from S.S.R. 83-12, upon which Wages relied. In S.S.R. 83-12, the Secretary stated:
 
 
 29
 "In some disability claims, the medical facts lead to an assessment of [residual functional capacity] which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting. Such an individual is not functionally capable of doing ... the prolonged sitting contemplated in the definition of sedentary work....
 
 
 30
 "There are some jobs ... in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have on-going work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will."
 
 
 31
 S.S.R. 83-12, quoted in, Wages, 755 F.2d at 498 (emphasis added). If the particular factual determination is made that an individual had formerly had a job, typically professional or managerial, in which the individual could sit or stand with a degree of choice, and if such an individual is still capable of performing that job or of transferring work skills to such a new job, that person would not be determined disabled. However, in most instances where an individual requires a sit-stand option, S.S.R. 83-12 would require a finding of disability.
 
 
 32
 Even were the court to read this exception into Wages and Howse, the vocational expert in this case did not make the requisite specific factual determinations. Rather, the ALJ first asked the vocational expert to assume Hood could perform sedentary work as defined in the regulations, with a sit-stand option, and asked whether jobs existed Hood could perform. When the vocational expert considered Hood's sit-stand limitations, he simply concluded, "if [Hood] can do those activities [sit, stand, walk, or drive] each for an hour or exchange after an hour, then that would fall within the definition of sedintary [sic ]." This conclusion of the vocational expert is at odds both with the general rule announced in Wages and with the exception to that rule discussed in S.S.R. 83-12. Further, the vocational expert testified the jobs Hood could perform in the national economy were 22,000 semi-skilled jobs and 12,000 skilled jobs. The semi-skilled positions were essentially assembly and inspection, not professional or managerial, positions. Again, this finding is at odds with S.S.R. 83-12. Thus, on the strength of Wages, Howse, and S.S.R. 83-12, I would reverse and remand.