Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellant,

v.

Harry M. SUTTON, Appellee.

No. 17626.

United States Court of Appeals Eighth Circuit.

Nov. 20, 1964.

Harvey L. Zuckman, Dept. of Justice, Washington, D. C., made argument for appellant; John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, Dept. of Justice, Washington, D. C., and Robert D. Smith, Jr., U. S. Atty., Little Rock, Ark., were with Harvey L. Zuckman, on the brief of appellant.

Abner McGehee, of Cockrill, Laser, McGehee & Sharp, Little Rock, Ark., made argument and filed brief for appellee.

Before VOGEL, VAN OOSTERHOUT and MEHAFFY, Circuit Judges.

VOGEL, Circuit Judge.

Harry M. Sutton brought this action against the Secretary of Health, Education and Welfare pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), as amended, to obtain judicial review of a final decision of the Secretary denying Sutton's application to establish a period of disability and for disability benefits under Sections 216(i) and 223, 42 U.S.C.A. §§ 416(i) and 423.

Sutton, the appellee here, filed his application to establish a period of disability on May 4, 1962. The application listed appellee's age as 59 and his occupation as "metal lather in construction of commercial buildings". Physical impairments listed were "back injury, prostate gland trouble, kidney trouble", and the date of beginning disability therefrom as November 18, 1961.

Initially and also upon reconsideration, the Bureau of Old Age and Survivors Insurance denied the application on the ground that Sutton had not established his inability to engage in substantial gainful activity by reason of a medically determinable impairment. Sutton then requested and obtained a *de novo* hearing before a Hearing Examiner. The Hearing Examiner's decision was in accord with that of the Bureau and upon the Appeals Counsel denial of Sutton's request for a review, the Examiner's decision became the Secretary's final decision. Upon review of the Secretary's final decision, the District Court reversed, from which reversal this appeal has been taken by the Secretary.

The tests by which the correctness of the District Court's decision is to be determined are not in dispute. The applicable legal standards have been carefully documented by Judge Blackmun in Celebrezze v. Bolas, 8 Cir., 1963, 316 F.2d 498, at pages 500 and 501. The primary query here on review is whether the finding of the Secretary to the effect that Sutton was able to engage in a substantial gainful activity is supported by substantial evidence. 42 U.S.C.A. § 405(g) provides, *inter alia:*

"* * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *."

■ The burden of establishing disability was upon Sutton. The statutory test of disability has been set forth in Celebrezze v. Bolas, supra, as follows, at page 501 of 316 F.2d:

"The statutory definition of disability imposes the three-fold requirement (a) that there be a 'medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration'; (b) that there be an 'inability to engage in any substantial gainful activity'; and (c) that the inability be 'by reason of' the impairment. Pollak v. Ribicoff, 2 Cir., 1962, 300 F.2d 674, 677."

The evidentiary facts in this case are substantially undisputed. Mr. Sutton was born in 1903, being 60 years old at the time of the hearing before the Examiner. He testified that he had completed high school and two years of college work, studying general subjects. After leaving college, he worked for two years as a motion picture projection operator and thereafter worked for two years as a house manager in a theater. He worked as an apprentice lather and plasterer for a period of about three years around 1920. He did electrical work on and off for about seven years with a telephone company as a switchboard repairman and night wire chief. In 1943 he began working for himself in the lathing and plastering business. In 1955 and on until the beginning of his disability in 1961 he worked as a journeyman lather with some supervisory experience. He did some estimating work when he was in business for himself. On February 13, 1961, he injured his back while working as a lather at the Capitol Construction Company in Hot Springs, Ar-

kansas. Shortly thereafter he experienced sudden acute pain in and appreciable swelling in the left testicle. In addition to the back injury, he claims to suffer from chronic prostatitis, kidney trouble, left inguinal hernia and extreme nervousness. He claims that he became unable to work on November 18, 1961, and that he has not worked nor attempted to work since that date because he is unable to do so. He is presently living on his savings. His wife does not work and his children are all gone.

A consideration of the medical evidence clearly illustrates the fact that Mr. Sutton was suffering from substantial physical disabilities which could be expected to be of long-continued duration. The ultimate factual question, however, is whether such disabilities at their onset or within the effective life of the application were such as to preclude substantial gainful employment. In Ribicoff v. Hughes, 8 Cir., 1961, 295 F.2d 833, 837, this court stated:

> "The activity in which a disabled claimant can be found to be able to engage must be both substantial and gainful and within his capacity and capability, realistically judged by his education, training and experience."

The record contains a considerable amount of medical evidence. Sutton was attended or examined by a number of physicians and surgeons. An examination of their reports indicates substantial unanimity of opinion. Dr. Jett Scott, the claimant's own attending physician, concluded his findings as of January 8, 1963, as follows:

> "Although X-ray films were not made of this patient's back, the clinical diagnosis would be:
>
> "1. Degenerative disc lesion of the lumbosacral spine, with its attendant symptoms.
>
> "2. Chronic prostatitis and epididymitis.
>
> "On these findings it would appear that this patient has a disabling condition of his lumbosacral spine and also a chronic recurrent prostatitis and epididymitis which would make him perhaps fifty percent (50%) disabled for any type of work that would require lifting and straining."

Dr. Horace R. Murphy examined Mr. Sutton on March 17, 1962. His summary and conclusion were as follows:

> "Mr. Sutton, who is 59 years old, shows evidence of degenerative disc disease in the last interspace. He also gives a history of what apparently is rather definite recurrent urinary difficulties. Apparently, he has been cleared by the GU specialist (sic) who have checked this aspect of his case. * * * By today's examination I would say that his disability is in the neighborhood of 10% *as related to the body as a whole.* He will undoubtedly be unable to do arduous work in the future and probably will have to seek social security because of his age. It is my opinion that surgery is definitely not indicated in this particular case unless he would develop nerve root compression signs, then surgery would be done in an effort to relieve the sciatica if it developed and not toward the end of rehabilitating this particular patient. Also, a myelogram is not indicated. In my opinion, there is no type of orthopedic treatment that will help Mr. Sutton at this time. A back brace might furnish him some comfort."

Dr. Charles N. McKenzie examined Mr. Sutton on August 29, 1962, expressing his opinion as follows:

> "From the foregoing history, physical and x-ray examination it is felt that this man has a disease process in which he should limit his activities insofar as heavy lifting, prolonged bending stooping, climbing or working in awkward positions.
>
> "He could perform work not requiring exertion or any type of activity with his extremities."

Dr. James G. Thomas, a neurologist, examined Mr. Sutton on September 14, 1962, stating in his report:

"From the findings on this examination, I feel that Mr. Sutton has fairly severe degenerative changes in the lumbar spine producing root irritation which results in pain and disability. I do not feel that he is able to engage in any activity requiring lifting, bending or stooping or excessive walking or standing. He should be able to work at some clerical job where physical exertion is kept at a minimum."

Dr. Charles N. McKenzie again examined Mr. Sutton on January 22, 1963, at which time he reported:

"*DIAGNOSIS*: (1). Vascular insufficiency, both lower extremities; (2). Degeneration nucleus pulposus L5–S1, with nerve root irritation.

"*OPINION*: We cannot say with certainty that the accident of 1–11–61 caused the disability of degeneration nucleus pulposus L5–S1. It is reasonable to assume that this was aggravated by the accident.

"The vascular insufficiency will probably cause more disability than the degeneration of the nucleus pulposus. This is not related to his injury.

"The per cent of disability of aggravation of his injury, in my opinion would not exceed 5 per cent of the body as a whole."

Dr. H. Elvin Shuffield gave the following medical report dated May 16, 1962:

"Exam. 12–20–61: Generalized stiffening of the lumbar spine— Flexion causes pain, muscle spasm when he attempts to extend the last 10 to 15 degrees. Both ankle jerks are almost completely absent. Decreased sensation in left leg.

"Objective findings . . . Osteoarthritis—Degeneration of the lumbo-sacral space—Probable lumbosacral strain.

"Treatment Referred to Dr. Curry Bradburn for urological consultation. Given prescription for Salicylates with minimal doses of Cortisone—cautioned not to do any heavy lifting or straining—get plenty of rest. 12–20–61

"When did you last examine the applicant? Jan. 29, 1962

"At time of last Exam. was advised to try to do some light jobs around his home"

Dr. Curry B. Bradburn, Jr., a urologist, who examined Mr. Sutton on December 22, 1961, reported:

"I feel this man has a chronic prostatitis and has a subsided left epididymo-orchitis with atrophic right testicle as a result of mumps when a child. At this time, I feel the chronic prostatitis is not contributing to his back symptoms but I think it accounts for his pyuria. Of course, this chronic infection will probably not be cleared and will require some intermittent treatment at various times. With the chronic infection present in his prostate, he will have the possibility of recurrence of the epididymitis.

"I feel the original onset of epididymitis was a result of the strain while at work. This did not leave any permanent disability. I do not feel it is referred to his present back difficulty."

From the medical evidence, the testimony of the claimant himself and his own observations, the Hearing Examiner found that Mr. Sutton suffered substantial impairments, " * * * principally that of involvement of the lumbosacral spine, together with chronic recurrent prostatitis and epididymitis and vascular insufficiency involving the lower extremities". He found:

" * * * This claimant, while admittedly having performed somewhat strenuous work, is well equipped by education, training and experience to do many types of less strenuous work, some with accompanying pain and discomfort; but this, standing alone, is not generally

a criteria upon which a finding of disability may be made. Further, it is shown that he has also performed work in other areas which would not aggravate his impairments. He has two years of college. He has business and management experience and is familiar with materials and costs in the building industry, all of which can serve him in good stead in the performance of substantial gainful activity and which furthermore would be attractive to a prospective employer.

"Therefore, in consideration of these premises, it must be and is the finding of the Hearing Examiner that, while the claimant suffers significant impairments that can be expected to be of long-continued and indefinite duration, such impairments did not at the time of alleged onset or within the effective life of his application for a period of disability and disability insurance benefits reach a level of severity as to preclude substantial gainful activity."

The District Court, in reversing, said:

"It is true that the record contains some expressions of medical opinion that plaintiff could do certain light work not requiring lifting, bending, stooping, or excessive walking or standing. But, in the Court's estimation, there is no evidence that there is any reasonable possibility that plaintiff could find such work, in view of his age, condition, and employment experience. While plaintiff might be able to do some very limited work under optimum conditions of employment, there is nothing to indicate that such conditions have been or will be available to him."

We think the District Court was in error and that the Secretary's findings of fact and the reasonable inferences to be drawn therefrom are supported by substantial evidence. The clear implication from the statute, su-

pra, is that where there are conflicts in the evidence or in the reasonable inferences to be drawn therefrom, it is for the Secretary and not the court to resolve such conflicts. Gotshaw v. Ribicoff, 4 Cir., 1962, 307 F.2d 840, certiorari denied, Heath v. Celebrezze, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970; Celebrezze v. Bolas, supra, 500, 501 of 316 F.2d; Hoffman v. Ribicoff, 8 Cir., 1962, 305 F.2d 1, 6. In reversing the Secretary's findings here, the District Court seems to have ignored the overwhelming and practically unanimous medical evidence upon which the Secretary relied. No medical opinion supports Sutton's contention that he is totally disabled and unable to do even light work. The situation in this case is even stronger for support of the Secretary's findings than the four physicians was conflicting. This in Bolas. There the testimony given by court held, at page 506 of 316 F.2d:

"* * * There is thus substantial evidence each way and it is such as would justify whichever finding and conclusion the trier of fact made. The resolution of this conflict is what the trier of fact is for. Had this case been one tried to a jury it is obvious to us that Bolas would not have been entitled to a directed verdict and that the jury's verdict either way would have been conclusive. Consequently, the Secretary's decision here, if it be wrong, is an error of fact and is not subject to correction by a reviewing court."

In the case at hand there is no such conflict in the medical testimony. That testimony is substantial support for the Secretary's findings and conclusion that the claimant was capable of performing light but gainful work and that, accordingly, he was not disabled within the statutory meaning of disability under the Act. It was error on the part of the District Court to substitute his judgment for that of the Secretary on the question of disability.

There is some indication that the District Court gave consideration to the

*availability* of light work to the claimant. It is clear from the legislative history of the Act and the cases interpreting it that disability is the criterion for receiving the Act's benefits. Availability of the light work which the Secretary found the claimant could perform is not the issue. The Act is not to be interpreted as unemployment compensation insurance. Celebrezze v. Bolas, supra, 316 F.2d at 507. Other Courts of Appeals are in accord. In Celebrezze v. O'Brient, 5 Cir., 1963, 323 F.2d 989, the Fifth Circuit said at page 992:

> "Congress might well have defined disability in broad terms under the Social Security Act and related it to unemployment by qualifying 'any substantial gainful activity' with the words 'available in the claimant's immediate working area' or similar words. That is not the statutory test; the Act is not an unemployment compensation law.
>
> \*     \*     \*     \*     \*     \*
>
> "In this case, as in all of these disability cases under the Act, the plaintiff asks the inevitable rhetorical question: What jobs are there? For the Secretary, 'What jobs are there' means, within the context of the Act, what kinds of work can the claimant perform, not what jobs are there available for him in Kosciusko, Mississippi. See Kerner v. Fleming, 2 Cir. 1962, 283 F.2d 916; Graham v. Ribicoff, 9 Cir. 1962, 295 F.2d 391; Rinaldi v. Ribicoff, 2 Cir. 1963, 305 F.2d 548. In the light of this correct understanding of the law, the Secretary's showing of O'Brient's ability to perform light work of a various nature is all the answer he is required to make to the claimant."

See, also, Robinson v. Celebrezze, 5 Cir., 1964, 326 F.2d 840, rehearing denied February 21, 1964; Hicks v. Flemming, 5 Cir., 1962, 302 F.2d 470, 473, certiorari denied 371 U.S. 868, 83 S.Ct. 132, 9 L.Ed.2d 106; Rinaldi v. Ribicoff, 2 Cir., 1962, 305 F.2d 548, 549; and Jones v. Celebrezze, 7 Cir., 1964, 331 F.2d 226, 228, wherein the Seventh Circuit stated:

> "Plaintiff had the burden of establishing his inability to engage in any substantial gainful activity. Degnér v. Celebrezze, supra. It is not enough to show that he has been unable to secure employment. Hicks v. Flemming, 5 Cir., 302 F.2d 470, 473."

Reversed and remanded with directions to enter judgment for the Secretary.