Gerald BILLINGS, Plaintiff,

v.

UNITED STATES of America, Secretary of Health, Education and Welfare, Elliott Richardson, Secretary, Defendants.

No. CV71–L–125.

United States District Court, D. Nebraska.

Nov. 30, 1971.

Charles F. Fisher, Chadron, Neb., for plaintiff.

Randall A. Rinquest, Asst. U. S. Atty., for defendants.

URBOM, District Judge.

The plaintiff, Gerald Billings, has commenced a suit pursuant to 42 U.S.C.A. § 405(g), which provides for judicial review in the federal district court of decisions made by the Secretary of Health, Education and Welfare under the Social Security Act. The procedural history documents the plaintiff's unsuccessful attempt to secure benefits under the Social Security Act through preliminary administrative channels. Consequently, on September 1, 1970, the plaintiff was granted a formal hearing conducted before a Social Security hearing examiner in Scottsbluff, Nebraska. It was the hearing examiner's conclusion that the plaintiff was not entitled to the establishment of a period of disability, 42 U.S.C.A. § 416(i), or to disability insurance benefits under 42 U.S.C.A. § 423. The hearing examiner's decision became the final decision of the Secretary after the appeals council of the Social Security Administration denied, on the basis that the hearing examiner's decision was correct, the plaintiff's request for review.

Both sides have moved for summary judgment and for the reasons that follow I conclude that summary judgment should be granted for the defendants.

It is now axiomatic that the § 405(g) jurisdiction vested in the federal district court is circumscribed. See Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Celebrezze v. Bolas, 316 F.2d 498 (C.A.8th Cir. 1963); Celebrezze v. Sutton, 338 F. 2d 417 (C.A.8th Cir. 1964); Brasher v. Celebrezze, 340 F.2d 413 (C.A. 8th Cir. 1965); Easttam v. Secretary of Health, Education and Welfare, 364 F.2d 509 (C.A.8th Cir. 1966).

■ The proper adjudication in this case turns upon the application of the statutory standard of "substantial evidence" to the hearing examiner's findings. Richardson v. Perales, supra. The Supreme Court of the United States has defined substantial evidence as evidence that would "justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939). Finally, if the findings of fact and the reasonable inferences drawn therefrom are supported by the substantial evidence, they are conclusive. Celebrezze v. Bolas, supra.

■ The applicant has the burden of establishing entitlement to disability benefits under the Social Security Act. See Easttam v. Secretary of Health, Education and Welfare and Celebrezze v. Sutton, supra. The burden requires the applicant to establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *." 42 U.S.C.A. § 423(d) (1) (A).

The plaintiff testified, before the hearing examiner, that he was employed as a lineman for the Bureau of Reclamation, performing maintenance and repair work on electrical power lines, when he fell from a 35-foot switching tower. Four days after the accident, on March 13, 1969, the plaintiff was placed under the care of Dr. John G. Yost. Dr. Yost's medical report dated September 11, 1969, describes the injuries that occurred as a result of the fall:

"Patient was first seen 3-17-69 with injuries involving left fibula and tibia. Fracture right ankle and multiple injuries. (Colles fracture,[1] chips off of his vertebra and some fractured ribs. Fracture right astragalus.[2] Because of continued difficulty, a triple arthrodesis[3] was performed on 7-1-69."

(T. 83)

In Dr. Yost's final medical report on September 8, 1970, it was observed:

"At the present time, Gerald is in a walking cast on his left leg. A year ago, he had a triple. arthrodesis on his right foot. Because of the partial immobilization of his right foot in the cast, it is my feeling that this man is unable to perform any type of work that requires walking, climbing, or standing."

(T. 102)

Dr. Yost did not testify at the hearing conducted by the hearing examiner.

The plaintiff's education, training and experience indicate that he began in 1959, after completing one year of college, to work as a motor scraper operator for a construction company. From December, 1959, to August, 1968, he was a lineman for the Nebraska Public Power System. The plaintiff performed similar work for the Federal Bureau of Reclamation from August, 1968, until the date of his injury. At the time of the accident he was 29 years of age. It is undisputed that the plaintiff did not work from the date of his accident to the time of the hearing before the hearing examiner, albeit he was a student attending classes at a local college.

The plaintiff testified that he did not feel that he could fill any type of employment. (T. 48). However, this testimony was then rebutted by testimony elicited from Dr. Leighton Palmerton, the government's vocational expert, who stated in part:

" . . . I disagree with his attorney that he is completely incapable of gainful employment. Actually, there are in the economy in the Dakotas and Nebraska hundreds of jobs that men with far less training and experience than this claimant has, far less education, sedentary jobs are performing [sic]. For instance, we have the jewelry factory in Rapid City that is staffed almost entirely with handicapped people. Many of them never get out of a wheelchair. . . ."

(T. 53)

Other jobs mentioned by Dr. Palmerton were:

"Spot cleaner in a garment factory, assembler of small parts, packer, inventory clerk, shipping clerk, elevator operator, checker and attendant, meter reader, although that might require

---

1. A break in the lower end (i. e., near the wrist) of the radius, the outer of the two bones of the forearm (i. e., the bone which is on the thumb side of the forearm). The break is usually within an inch of the end of the bone, and the short fragment is usually displaced toward the back or hairy side of the forearm. The wrist is similarly displaced, and the hand is turned toward the thumb side of the forearm. J. E. Schmidt, Attorneys' Dictionary of Medicine and Word Finder, p. 201.

2. The bone in the back part of the foot which forms a joint with the lower ends of the two bones of the leg. Known also as talus and ankle bone, in allusion to its entering in the formation of the ankle joint. Ibid., p. 138.34.

3. The surgical procedure of making a joint immovable by causing the surfaces of the bones to fuse or grow together. Ibid., p. 138.25.

too much walking, counter supervisor, parts order clerk."

(T. 54)

Dr. Palmerton testified that these jobs numbered in the hundreds in the nearby economy. (T. 55) Significantly, the vocational expert's testimony was not attacked before the hearing examiner on the basis that hundreds of the type of sedentary jobs did not exist in the national economy, but rather that the expert was unfamiliar with job opportunities existing in the Chadron, Nebraska, area. The clear language of 42 U.S.C.A. § 423(d) (2) (A) [4] indicates that "the courts are not to be concerned about the availability of jobs in the community or even their availability to one with the claimant's impairments, but only with the question of the claimant's ability to engage in gainful activity." Whiten v. Finch, 437 F.2d 73 (C.A. 4th Cir. 1971).[5] Also see Mullins v. Finch, 319 F.Supp. 588 (U.S.D.C.Va.1970); Hunley v. Cohen, 288 F.Supp. 537 (U.S.D.C.E.D. Tenn.1968); and Gendreau v. Finch, 298 F.Supp. 548 (U.S.D.C.Minn.1969).

■■■ The plaintiff has urged that the finding of disability by the Bureau of Reclamation should be binding upon the Secretary in determining disability under the Social Security Act. The cases are legion that hold that the Secretary is not bound by the prior determination of disability made by another agency, whether federal or state. See e. g., Gee v. Celebrezze, 355 F.2d 849 (C.A.7th Cir. 1966), cert. denied, 385 U.S. 856, 87 S. Ct. 98, 17 L.Ed.2d 83; Lackey v. Celebrezze, 349 F.2d 76 (C.A. 4th Cir. 1965); Dupkunis v. Celebrezze, 323 F.2d 380 (C.A.3rd Cir. 1963). It should be noted that there is no evidence to indicate that the standard of disability applied by the Bureau of Reclamation was the same required to be applied by the Secretary in a Social Security case.

I have carefully reviewed the complete record that was presented to the appeals council. It is my conclusion that substantial evidence existed to support the council's determination that the plaintiff was not entitled to benefits under the Act. Therefore, those findings are conclusive on this court.

An appropriate order will be entered sustaining the defendant's motion for summary judgment.

4. "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; or

\* \* \* \* \*

"(2) For purposes of paragraph (1) (A)—

"(A) an individual \* \* \* shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C.A. § 423(d) (1) (A) and (2) (A)

For the applicable regulation see 20 C.F.R. § 404.1502(b).

5. Several federal courts prior to 1967 had held that the Secretary should determine the availability of employment within a geographical area in which the plaintiff could reasonably be expected to market his labor. See, e. g., Gardner v. Stewart, 361 F.2d 827 (C.A.4th Cir. (1966); and Boyd v. Gardner, 377 F. 2d 718 (C.A.4th Cir. 1967). However, Congress, by enacting the 1967 amendment to 42 U.S.C.A. § 423(d) (2) (A), intended to relieve the Secretary of proving that available occupations existed within the area of the claimant's residence.