Beryl DUNCAN, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of
Health, Education and Welfare,
Defendant.

No. J–C–79–31.

United States District Court,
E. D. Arkansas,
Jonesboro Division.

April 21, 1980.

Phil J. Duncan, Little Rock, Ark., for plaintiff.

Terry L. Derden, Asst. U. S. Atty., Little Rock, Ark., for defendant.

## MEMORANDUM AND ORDER

WOODS, District Judge.

The defendant's Motion for Summary Judgment is now before the Court in this Social Security case. The plaintiff's Motion to Remand and Amended Motion to Remand are also before the Court. In considering the defendant's motion, the Court must determine whether substantial evidence exists to support the final decision of the Secretary denying disability insurance benefits to the plaintiff. 42 U.S.C. § 405(g). In considering the plaintiff's motions, the Court must determine whether "good cause" exists for directing the Secretary to reconsider her decision. 42 U.S.C. § 405(g).

■ The plaintiff originally filed an application for disability insurance benefits on October 7, 1975 (Tr. 89). This application was denied by the Social Security Administration on October 21, 1975, and reconsideration was not requested. A second application was filed on October 12, 1977 (Tr. 95). This application was denied initially and upon reconsideration. The plaintiff requested a hearing before an Administrative Law Judge, which was held on July 11, 1978 (Tr. 33). The Administrative Law Judge denied the claim by decision dated November 21, 1978 (Tr. 23). The Appeals Council of Health, Education, and Welfare, pursuant to 20 C.F.R. § 404.947a, refused to review the decision of the Administrative Law Judge. The decision of the Administrative Law Judge represents, therefore, the final decision of the Secretary. 20 C.F.R. § 404.940. The plaintiff brought this action for judicial review of the Secretary's final decision pursuant to 42 U.S.C. § 405(g).

■ Before proceeding to a review of the record, it must be determined whether the Secretary has reopened the denial issued on October 21, 1975. The first application alleged April 23, 1975, as the onset of disability; the second application alleged April 20, 1975, as the onset date. If the Secretary treated the second application as a request to reopen the earlier denial, the Court is precluded from reviewing the denial of the reopening request.[1]  *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

■ The second application was filed more than twelve months, but less than four years, after the denial of the first application. Therefore, any consideration of reopening falls within the "good cause" provision of 20 C.F.R. § 404.957(b), as further defined by 20 C.F.R. § 404.958. Under

---

1. The Court has frequently considered the question of whether the Secretary reopened a prior determination. Where a second application is filed subsequent to a denial, the Secretary's consideration of the new application should state explicitly whether the first denial is being reconsidered.

that latter Regulation, there are three bases for a finding of good cause: (1) new and material evidence, (2) clerical error, and (3) error on the face of the evidence.

Under *Lauritzen v. Weinberger*, 514 F.2d 561 (8th Cir. 1977), a determination of "error on the face of the evidence" is made by determining whether the prior decision was clearly incorrect or an injustice committed. A finding in a second determination that a claimant was not disabled during the same period covered in the first determination is an implicit finding that the first determination was not clearly incorrect or no injustice was committed. While the Court, then, can dismiss "error on the face of the evidence" as a possible ground for reopening the previous determination, it is not clear whether the other two grounds served as a basis for reopening. The Secretary should answer this question upon remand, that is, whether there was a reopening.

The plaintiff was born on January 2, 1924, and resides with her husband (Tr. 41). She has an eighth-grade education (Tr. 42). Prior to 1975, she worked twenty-three years for the Safeway grocery store (Tr. 57). Her duties in that position were very general: "I checked groceries, I stacked groceries, I loaded buggies, burned boxes and ordered." (Tr. 53). She began receiving private retirement benefits on the basis of disability in 1975, and has not worked since (Tr. 41–42).[2]

Although the medical evidence indicates that the plaintiff has suffered back pain for many years (Tr. 136, 146), her alleged disability stems from a discectomy and partial hemilaminectomy operation on April 25, 1975 (Tr. 147, 151), and a slip and near fall in 1976 (Tr. 83–84). In her testimony at the administrative hearing, she focused on the allegedly debilitating pain. She stated that she suffered pain in her lower back, both legs, and in the neck area, at least some of which was attributed to arthritis (Tr. 44, 52). The pain was said to preclude most normal household activity as well as any gainful employment. She stated that she was unable to walk for more than a block or two and that she had difficulty in dressing, driving, and in either sitting or standing for any appreciable length of time (Tr. 44–48). Her testimony was corroborated by her husband (Tr. 71–72, 76–78).

The medical evidence consists primarily of several reports by three doctors. The office and hospital notes of Dr. James C. H. Simmons span a period from April 15, 1975, to June 21, 1977 (Tr. 146–149). Dr. Simmons' treatment of the plaintiff predates the 1975 surgery and extends over a year beyond the 1976 accident. The reports corroborate the plaintiff's pain symptomatology from the earliest date.

Upon initial examination, the doctor determined that myelographic testing was necessary to evaluate the complaints of back pain and X-ray evidence of degenerative spurring in the low back area (Tr. 146). Results of the myelogram led to the back surgery (Tr. 147). Subsequent reports indicate that the plaintiff's condition improved somewhat post-operatively and until the accident on August 12, 1976 (Tr. 147–148). In a report dated September 13, 1976, the doctor diagnosed cervical sprain which aggravated a preexisting degenerative osteoarthritic condition at the fifth cervical vertebra (Tr. 149). The plaintiff returned to Dr. Simmons on June 21, 1977, complaining of low back pain and, upon examination, the doctor diagnosed mild degenerative osteoarthritis of the lumbosacral spine (Tr. 149).

The record also contains correspondence between Dr. Simmons and Safeway's insurance company. In one such letter dated February 25, 1977, the doctor stated in full:

It is my feeling that a patient who has had a protruded lumbar disc should not be assigned to job activities which involved lifting objects greater than 25 lbs. in a bent position. I do think she could lift objects from a squatting position that weigh 25 lbs. if necessary. I do not feel that she should, however, be assigned to

---

**2.** As a result of an accident, she also received Worker's Compensation benefits in the amount of $11,970.00, half of which was allocated for future medical expenses (Tr. 116). Her retirement benefits amount to $293.70 per month (Tr. 42).

lifting objects of less than 25 lbs. repeatedly in a bent position if this could be avoided. (Tr. 154).

The doctor attempted to clarify this letter in another letter dated June 13, 1977, which stated that the plaintiff ". . . should not be assigned to job activities which involved repeated lifting from a bent position." (Tr. 157). He added that he thought the plaintiff could lift twenty-five-pound objects from a squatting position, "if necessary." (Tr. 157).

The record also contains four reports from Dr. Merrill J. Osborne, the first of which is dated August 12, 1976, the date of the plaintiff's accident. Dr. Osborne's focus is therefore on the condition of the cervical area of the spine, although he also stated that the plaintiff was suffering "degenerative arthritic changes in both knees with considerable pain" upon motion testing (Tr. 158). Dr. Osborne's diagnosis of the plaintiff's cervical spine condition differed somewhat from that of Dr. Simmons. While Dr. Simmons diagnosed it as "cervical sprain" aggravating a preexisting arthritic condition, Dr. Osborne believed the condition ". . . appeared to be indicative of nerve root compression." (Tr. 167). In a report dated October 30, 1978, received subsequent to the administrative hearing but prior to the Administrative Law Judge's decision, Dr. Osborne stated: "I really do not see how [the plaintiff] will ever be able to work again, due to her limited education plus the fact that she's always done the type of work that requires the use of her back and etc." (Tr. 170). Dr. Osborne also stated in the same report that the plaintiff had "considerable limitation" in doing any type of work requiring bending or any lifting.

The record also contains one report from Dr. Joe K. Lester, who examined the plaintiff on March 25, 1977 (Tr. 155). Dr. Lester stated that X-rays revealed "evidence of degenerative change" in the lower spine. The doctor also opined as to the plaintiff's disability as follows:

This examiner feels that an award of 15% physical impairment of the body as a whole is a fair award. However, the significant thing is from the economic or functional standpoint, this is 100% disability because the patient has not been permitted to return to gainful employment by her employer. (Tr. 156).

The Court notes that Dr. Lester's opinion reflects an understanding of percentage disability ratings under Arkansas Worker's Compensation law, as well as the definition of disability for Social Security purposes. There is no considerable inconsistency in the divergent ratings by Dr. Lester, however, because the opinion of one hundred per cent disability includes a consideration of vocational factors relevant for the most part only under the Social Security Act. The record does show that the plaintiff's employer of twenty-three years has not permitted her to return to work and has placed her in retirement from its company based on her disability. However, the ability to engage in substantial gainful activity is not determined on the basis of an ability to return to a former occupation; rather, the test is a functional one, that is, whether the claimant *can* engage in substantial gainful activity. Vocational evidence is necessary only to show that jobs exist in the national economy which the claimant is capable of performing.

The Administrative Law Judge found that the plaintiff was not so severely impaired as to be considered disabled under the Social Security Act. The definition of disability for Social Security purposes is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . 12 months." 42 U.S.C. § 423(d)(1)(A). An individual may be suffering from a medically determinable impairment, but if able to engage in any substantial gainful activity, proof of disability is not shown. The claimant has the burden of showing an inability to engage in substantial gainful activity. *Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975). Where the claimant shows the inability to perform his past or most usual occupation due to a medically determinable

impairment, the burden shifts to the Secretary to show that the claimant can perform other substantial gainful activity existing in the national economy. *Johnson v. Califano,* 572 F.2d 186, 187–88 (8th Cir. 1978); *Timmerman, supra* at 443; *Alsobrooks v. Gardner,* 357 F.2d 110 (5th Cir. 1966); *Slone v. Gardner,* 355 F.2d 485, 486–87 (6th Cir. 1966); *Ray v. Celebrezze,* 340 F.2d 556, 559 (4th Cir. 1965).

Here, the plaintiff has alleged that she is precluded from returning to her former job, and the Administrative Law Judge stated:

> . . . It is further the opinion of this Administrative Law Judge that the level of severity of the impairments which have been discussed herein is such that they would not prevent claimant from performing any of a wide variety of light and sedentary types of work, so long as such work did not require constant bending, or more than occasional lifting of as much as 25 pounds. Included within this consideration is claimant's age (54) and her education (8th grade) and the fact that she worked for a number of years in the retail grocery business, doing various kinds of jobs within the grocery store type of work. (Tr. 21).

From his categorization of her functional levels and the discussion of potentially transferrable skills, the implication is that the Administrative Law Judge found the plaintiff to be unable to engage in her most usual activity. Having reached that decision, the existence of available jobs must be a fact supported by substantial evidence; that is, the burden shifted. Normally, the Court would remand the case for a consideration of vocational evidence,[3] but for reasons to be discussed, it has concluded that that will not be necessary.

The only other conclusion that could be drawn from the opinion is that the Administrative Law Judge considered the plaintiff's previous work activity light and sedentary and, thus, he considered claimant capable of returning to her past occupation. The brief description in the record of the plaintiff's work responsibilities with Safe-

way does not support this conclusion and, normally, the Court would remand this case for the taking of additional evidence as to the requirements of the plaintiff's previous job. Again, however, the Court need not remand for that purpose.

The plaintiff made several allegations of pain in her testimony. Indeed, her claim that she is disabled focuses on the pain symptomatology (Tr. 44, 46–47, 48, 50–51, 52, 65–66, 70). The pain symptomatology was corroborated by her husband (Tr. 71–72, 76–77). It is further corroborated in every medical report contained in the record. Not only do the doctors repeat what the plaintiff told them, X-ray evidence confirms the existence of impairments in the precise loci of the plaintiff's complaints. She complains of pain in her legs; Dr. Osborne identified degenerative arthritic changes in both knees. She complains of pain in the upper back and neck area following the slip and near fall; Dr. Simmons diagnosed cervical sprain aggravating a pre-existing arthritic condition, while Dr. Osborne stated that, on the basis of X-rays, the condition was indicative of nerve root compression. She complained of pain in the low back; myelograms revealed a condition requiring a discectomy and hemilaminectomy.

■ The Administrative Law Judge found that the plaintiff was, in fact, impaired as a result of her various medically determinable defects, but held that she was not so severely impaired as to be precluded from gainful employment (Findings 3–8, Tr. 22–23). As already stated, under 42 U.S.C. § 423(d)(1)(A), there must be some medically determinable impairment. Because pain, when coupled with a medically determinable impairment, can be disabling under the Social Security Act, *Yawitz v. Weinberger,* 498 F.2d 956, 960–61 (8th Cir. 1974), it must be given "serious consideration." *Northcutt v. Califano,* 581 F.2d 164 (8th Cir. 1978). Moreover, it is not necessary that the plaintiff show a direct cause and effect relationship between a physical impairment

---

**3.** *See Boyer v. Califano,* 598 F.2d 1117 (8th Cir. 1979).

and the complaints of pain. *Id.; Klug v. Weinberger*, 514 F.2d 423, 427 (8th Cir. 1975). As stated in *Northcutt, supra* at 166:

> Although evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore difficult to evaluate, the administrative factfinder must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant. *See Thorne v. Weinberger*, 530 F.2d 580, 583 (4th Cir. 1976); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974) *cert. denied* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed. 403 (1975).

Although the law in the Eighth Circuit *may* have been otherwise[4] prior to *Northcutt*, other circuits have long held that pain, unaccompanied by objective evidence, may nevertheless support a claim of disability. *See Sayers v. Gardner*, 380 F.2d 940, 948 (6th Cir. 1967); *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965); *Ber v. Celebrezze*, 332 F.2d 293, 299 (2d Cir. 1964); *Page v. Celebrezze*, 311 F.2d 757, 762–63 (5th Cir. 1963); *see Northcutt, supra* at 166 n.2.

■ With the elimination of the need for objective evidence in this context and the recognition that pain is most often provable "of necessity" only on a subjective basis, the claimant's credibility becomes the most important consideration. *Northcutt* held that the claimant's complaints of pain, albeit subjective, must be given serious consideration. The Court stated:

> . . . Disregard of a claimant's subjective complaints of pain, however, is not justified solely because there exists no objective evidence in support of such com-

plaints. Here claimant's testimony of pain and disability has been corroborated by her husband and other lay witnesses. The evidence shows that the claimant, prior to her disability, had been a good worker, doing heavy work at various jobs in the garment factory. There is no finding or evidence that suggests she is malingering or not telling the truth. *Id.* at 166.

Based on *Northcutt*, the Courts of the Eastern District of Arkansas have held in innumerable unpublished cases and in one published case, *Thompson v. Harris*, 476 F.Supp. 984 (E.D.Ark.1979), that credibility findings *must* be made by the Administrative Law Judge where allegations of pain severe enough to be disabling, coupled with a medically determinable impairment, are involved. In *Thompson, supra*, the Court stated:

> The defendant refers to *Acevedo Ramirez v. Secretary of Health, Education, and Welfare*, 550 F.2d 1286 (1st Cir. 1977), holding that a finding discrediting claimant's subjective testimony as to his pain need not be explicit. No doubt this is the law in the First Circuit, but it is not the law here.

In *Thompson* and in the innumerable other unpublished cases coming before the Courts of the Eastern District, the decisions involving pain and the Administrative Law Judge's failure to make credibility findings have stated simply that credibility findings were required. The cases were remanded for reconsideration by the Secretary for the purpose of making those findings. In the present case, the Court squarely faces the question of the adequacy of the credibility findings made by the Administrative Law Judge.[5] In his decision denying the plaintiff's claim, he stated:

---

4. *See Benson v. Matthews*, 554 F.2d 860 (8th Cir. 1977); *Easttam v. Secretary of Health, Education, and Welfare*, 364 F.2d 509 (8th Cir. 1966).

5. The question of the adequacy of the Administrative Law Judge's credibility findings was implicitly addressed in *Money v. Califano*, 470 F.Supp. 636 (E.D.Ark.1979), decided prior to *Thompson, supra*. The Administrative Law

Judge in *Money* had made the following analysis, as quoted by the Court, at 641:

> "The preponderance of the credible evidence does not reveal that the claimant's physiological and symptomological complaints, particularly pain associated with physical activity, is such as to preclude his returning to substantial gainful employment; . . . ."

Although the Court stated that it was not free to substitute its judgment for that of the trier of

... The matter of claimant's pain has been carefully considered by this Administrative Law Judge, including not only claimant's testimony, but the history given by her to her physicians, the record of her medications, her reported ability to do portions of her housework, and her appearance and demeanor at the hearing. In consideration of all of the relevant factors pertaining to pain, it is the opinion of this Administrative Law Judge that claimant does not have that degree of pain, or that the level of severity of her pain is such, as would materially interfere with her capability of concentrating upon and performing the duties of any light and sedentary jobs which would be within her capabilities... (Tr. 21)

■ The question, therefore, is whether the decision of the trier of fact is supported by substantial evidence.[6] Great weight should be given to the Administrative Law Judge's findings where credibility of witnesses is involved. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966); *Kerner v. Celebrezze*, 340 F.2d 736 (2d Cir. 1965), *cert. denied*, 382 U.S. 861, 86 S.Ct. 121, 15 L.Ed.2d 99 (1965); *Heikes v. Flemming*, 272 F.2d 137 (7th Cir. 1959). It is for the Secretary and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony. *Lane v. Gardner*, 374 F.2d 612, 616 (6th Cir. 1967); *Celebrezze v. Sutton*, 338 F.2d 417, 421-422 (8th Cir. 1964); *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). The Court must place great weight on the Administrative Law Judge's findings because he alone has the opportunity to view the witness' demeanor. Many of the factors relevant to a decision on credibility are not reflected in the transcripts reviewed by this Court. Of course, those factors should be included in the findings of the Administrative Law Judge.

There are other facts, however, which may be gleaned from the otherwise dry transcripts which should and must be considered in assessing the testimony of a claimant in a Social Security case. *Northcutt* suggests certain considerations. Is there a lengthy earnings record, or is there, on the other hand, evidence of malingering? Is the testimony of the claimant corroborated by lay witnesses? To these suggested considerations of *Northcutt*, the Court must now add other relevant considerations in an attempt to provide a guide for review of an Administrative Law Judge's credibility findings. The Eighth Circuit has not spoken expressly, but it is logical that if credibility findings are to be required, they must be supported by substantial evidence, giving due weight to the opinion of the Admin-

---

fact, it concluded that there was not substantial evidence to support the findings if the record was considered as a whole. *Id.* at 641–642. The plaintiff's complaints of pain and the conclusions of a psychologist as to those complaints, together with the testimony of a vocational expert, were such that a finding that the plaintiff was not disabled was not supported by substantial evidence.

6. The substantial evidence standard is, of course, the applicable standard of judicial review in all Social Security cases. 42 U.S.C. § 405(g). Jurisdiction in a case of this nature is extremely limited. The Court is not authorized to try the case de novo, or to consider additional evidence, or to substitute its judgment for that of the administrative fact finders on questions of fact. If the findings of the agency are supported by substantial evidence appearing in the record, considered as a whole, the Court is required to accept the findings. *Hemphill v. Weinberger*, 483 F.2d 1137, 1139 (5th Cir.

1973); *Ginsburg v. Richardson*, 436 F.2d 1146 (3rd Cir. 1971), *cert. denied*, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966); *Easttam v. Secretary of Health, Education, and Welfare*, 364 F.2d 509 (8th Cir. 1966). Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Klug v. Weinberger*, 514 F.2d 423 (8th Cir. 1975); *Blanscet v. Ribicoff*, 201 F.Supp. 257, 260 (W.D.Ark.1962). Further, the Court must base its decision upon all the evidence in the record and not just the evidence favorable to the Secretary. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

istrative Law Judge in a review of the record as a whole. The Court's task, therefore, is to begin where *Northcutt* stopped. In *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974), cited with approval by the Eighth Circuit in *Northcutt*, the Court dealt with the absence of a consideration of subjective complaints of pain as follows, at 312:

> ... [The Hearing Examiner] did not address himself to the testimony of plaintiff and his wife concerning plaintiff's pain, his alleged inability to dress himself or bathe, his limitations on standing, and walking, as well as other restrictions caused by his extensive hip and leg deformities. As fact finder he has the right to reject their testimony entirely, but. failure to indicate rejection could lead to a conclusion that he neglected to consider it at all. 'In addition to objective medical facts and expert medical opinions, the Hearing Examiner must consider the claimant's subjective evidence of pain and disability, as corroborated by family and neighbors; and all of these factors must be viewed against the applicant's age, educational background and work experience.' *Mode v. Celebrezze*, 359 F.2d 135, 136 (4th Cir. 1966). Pain, in itself, may be a disabling condition, *Marunich v. Richardson*, 335 F.Supp. 870 (W.D.Pa. 1971), and the present record includes medical data which would not contradict, indeed, would support plaintiff's complaints of pain.

Another recent case from the Third Circuit, *Dobrowolsky v. Califano*, 606 F.2d 403 (1979), also involved the issue of subjective complaints of pain. In that case, the claimant had made substantial allegations of pain which were corroborated by medical evidence in placing an identifiable impairment at the pain's locus. The Administrative Law Judge in that case had relied on a vocational expert's testimony that the claimant could perform sedentary work within the restrictions of a heart condition and associated pain. The Court stated, at 407:

> Testimony of subjective pain and inability to perform even light work is entitled to great weight, particularly when,

as here, it is supported by competent medical evidence. [citation omitted]. Moreover, when the claimant has a work record like Dobrowolsky's—twenty-nine years of continuous work, fifteen with the same employer—his testimony as to his capabilities is entitled to substantial credibility.

Similarly, in *Nanny v. Mathews*, 423 F.Supp. 548 (E.D.Va.1976), the Court emphasized the importance of a consistent work history in assessing a claimant's credibility. The Court in that case stated, at 551:

> ... There is no evidence to show that plaintiff was not truthful in her testimony nor can there be any doubt as to her motivation to work. She had worked with Brown and Williamson Tobacco Company for 19½ years prior to her disability and with Titmus Optical for six years prior to that. In 1973, she underwent a back operation and missed a great deal of work but worked full time with great difficulties and at much inconvenience before her back and leg problems forced her to discontinue work in January of 1975. A person with such a strong work record should be afforded substantial credibility as a witness to her own work capabilities. *Vitek v. Finch*, [438 F.2d 1157, 1159 (4th Cir. 1971)]. Moreover, plaintiff's objective testimony was corroborated by the testimony of her husband and a neighbor.

■ Thus, the existence of a strong and consistent work record should and must be an important factor in assessing credibility.

In addition, the corroboration of lay witnesses mentioned in the quoted portions of *Baerga v. Richardson, supra,* and *Nanny v. Mathews, supra,* must also be considered in assessing a claimant's credibility. This is an especially natural consideration, given the subjective nature of pain. Because it is subjective, and objective medical opinion may not be necessarily supportive, lay witnesses should play an important role. The importance of lay witnesses in the absence of expert opinion is already an established

facet of Social Security law in the Eighth Circuit, as indicated in the importance attached to lay corroboration in *Northcutt*, specifically on the issue of subjective pain, and in *Murphy v. Gardner*, 375 F.2d 1 at 7 (8th Cir. 1967), where the issue was the claimant's mental health. *See also Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966), where the Court stated:

'The Court said in *Underwood v. Ribicoff* [298 F.2d 850 at 852 (4th Cir. 1962)] that expert medical opinion and evidence in itself, may not be sufficient to enable a fact finder properly to determine whether or not a disability exists within the meaning of the [Social Security] Act. Where it is not possible to reach a determination based on such evidence subjective testimony by lay witnesses may be entitled to great weight where it is uncontradicted in the record.' *Id.* at 642.

The Administrative Law Judge should and must consider lay corroboration, if any, of the claimant's subjective complaints. It follows that to discredit the claimant's testimony is to likewise discredit the corroborative testimony of friends and neighbors.

The medical evidence may also support the claimant's credibility, although, as already stated, it is not necessary that the pain's etiology be medically traceable. *See Klug v. Weinberger, supra.* Where the medical evidence places a defective or degenerative physical condition at the locus of the plaintiff's alleged pain, however, this should and must be considered as supportive of the claimant's credibility.

Finally, the cause or alleged cause of the plaintiff's pain may be some random factor which can be proven objectively in support of the claimant's credibility.[7] Accidents which occur may remove an individual with an otherwise established record from the work force through no fault, much less desire, of his own.

Utilizing these guidelines, the evidence in support of the claimant's credibility in the instant case is overwhelming. She worked for twenty-three years in the same job. She was forced to retire because of her bad back, which required surgery, and the subsequent accident. Her complaints of pain and her general condition were corroborated by her husband. She has repeated the complaints to her doctors. The areas of the pain are identified in the medical findings as areas where physical degeneration is evidenced. In sum, there is not substantial evidence to support the finding of the Administrative Law Judge that the claimant was not disabled.

Because of the overwhelming evidence, the prior decision denying benefits is reversed, and the Court orders the Secretary to establish a period of benefits based on the onset date of October 12, 1977. The case is also remanded to the Secretary to determine whether the denial of October 21, 1975, was reopened and, if so, to award benefits for the period from April 20, 1975, to date.

THEREFORE, the decision of the Secretary is reversed, and the case remanded, in part, in accordance with this decision.

---

7. *See generally The Definition of Disability in Social Security and Supplemental Security Income: Drawing the Bounds of the Welfare Estates*, 89 Harv.L.Rev. 833, cited in *Wroblewski v. Califano*, 609 F.2d 908, at 912 n.3 (8th Cir. 1979).